*IN ERROR.*

*ALBANY,*
*Feb. 1808.*

Trustees of
Huntington
v.
Nicoll.

The Trustees of the Freeholders and
Commonalty of the town of Hunt-
ington, Isaiah Jarvis, Silas Smith,
Jesse Wickes, Timothy Conklin,   *Appellants,*
Phineas Carll, John Oakley, Sa-
muel Skidmore, Richard Conklin,
and Nathaniel Biggs,

*against*

William Nicoll, an infant, by Selah
Strong, and Richard Udall, his   *Respondent.*
guardians,

No appeal lies from a temporary order of the court, awarding an injunction ; and such an order having expired, the appeal was dismissed. On an appeal from an order granting an injunction to stay proceedings at law, this court will not hear and decide on the merits of the cause, if the court below had not heard the cause on the merits, before the order. Where a bill is filed in the court of chancery, for the purpose of preventing a multiplicity of suits at law, and to have the title tried and finally settled, by one suit, under the direction of the chancellor, *it seems,* that the bill will be sustained, though there had been but one or two trials at law. No appeal lies from an order of the court of chancery, for the examination of the *guardians* of the complainant, who was an infant, as witnesses for him ; such examinations being, always, taken *de bene esse*, and saving all just exceptions, and, if inadmissible, on account of the incompetency of the witnesses, may be suppressed at the hearing before the chancellor, or if admitted, may then become the ground of appeal.

IN *May*, 1806, Selah *Strong* and *Richard Udall*, the general guardians of the person and estate of *Wm. Nicoll*, the respondent, an infant, of the age of seven years, appointed by the court of chancery, filed their bill in that court, against the appellants. From the pleadings in the cause, the following facts appeared.

On the 4th *June*, 1688, letters patent were issued by the governor of the province of *New-York*, to *William Nicoll*, an ancestor of the respondent, for " all those islands and small isles of sandy land, and marsh or meadow grounds, with the appurtenances, situate, lying and being on the south side of *Long-Island*, between the inlet or gut, commonly called *Huntington* gut, and the lands of the said *Wm. Nicoll*, at a certain river, called *Conetqunt*, in the bay or sound, that is between the firm land of *Long-*

IN ERROR.
......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

*Island* and the beach, together with all and singular, the lands, meadows, marshes, moors, water-ponds, hawking, hunting, fishing, fowling, and all the rights, profits, hereditaments and appurtenances, to the said islands and premises belonging, or in any wise appertaining." *Wm. Nicoll*, the patentee, took possession of the islands described in the letters patent, consisting of four islands, called *Fire-Island, Captree-Island, Oak-Island*, and *Grass-Island*, the three last of which are the subject of controversy in this cause. The patentee, and his descendants, the ancestors of the respondent, were successively seised and possessed of the said islands, until the year 1799, when the father of the respondent died. Upon his death, the title to the islands vested in the respondent; and the guardians of the respondent, having been appointed in the same year, immediately took possession thereof, which they have ever since held. The inlet, or gut, described in the letters patent, as commonly called *Huntington* gut, was a passage of water through the beach, from the bay into the main ocean, situated *westerly* of all the said islands, at the time when the letters patent issued ; but, at present, there is not, and for many years past has not been, any such gut or inlet, situated westerly of the islands. The freeholders and inhabitants of the town of *Huntington* have, at different times, entered upon the islands, and cut and carried away the grass and other products growing thereon. Lately, the trustees of the freeholders and commonalty of the town of *Huntington*, have laid claim to *Captree-Island, Oak-Island*, and *Grass-Island*, as belonging to that town ; and have, under their claim of right, authorised others to enter upon those islands, and take the products thereof. The guardians of the respondent thereupon brought actions of trespass, in the court of common pleas, in *Suffolk* county, against *Zebulon Smith, Isaiah Jarvis*, and *Silas Smith*, who had entered upon those islands, under the authority of the trustees of the town of *Huntington*. Those actions were removed into the supreme court, and

IN ERROR.
........
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

the respondent declared, by his guardians, in trespass *quare clausum fregit*, for entering upon, and cutting down the grass, sedge, &c. and committing other trespasses on the said islands ; and the defendants justified their acts under the authority of the town of *Huntington*. One of the actions was tried at a circuit court, held in the county of *Suffolk*, in *September*, 1805 ; and after a trial of two days, and an investigation of the titles and claims of the respective parties, the jury found a verdict for the plaintiff, on which judgment was entered up. The other actions are still pending. *Jesse Wickes*, claiming a right or title to the islands in question, derived from the town of *Huntington*, instituted actions of trespass against *Peter Monfort* and *Elias Leek*, for supposed trespasses, committed by them on those islands, under the authority of the guardians of the respondent, and their defence in those actions depends on the respondent's title. The trustees of the town of *Huntington* still persist in their claim of right to the islands in question : And the respondent, in his bill, alleged, that the trustees not only declared their intention to persist in their claim ; but encouraged others to enter upon the said islands, and to cut and carry away the grass, &c. in despite of the respondent's title, and which would oblige the respondent to abandon his right, or lead to such a multiplicity of actions, as would impoverish the respondent, and produce great personal animosities among the inhabitants of *Suffolk* county.

The respondent, in his bill, prayed, that his witnesses might be examined, and their testimony perpetuated, in order that the respondent's title might be established, on the ground of the verdict and judgment at law, or such other grounds as the court might direct, and he be quieted in the possession thereof; and that the trustees of *Huntington* might be restrained by a perpetual injunction, from entering on the islands, and that the suits at law, brought by *Jesse Wickes* might be restrained; &c.

IN ERROR.
......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

The bill having been sworn to by the guardians of the respondent, application was made for an injunction to stay the proceedings at law, pursuant to the prayer of the bill. But the application was not then granted by the chancellor, who refused to award an injunction, until after the answers of all the defendants should come in.

The appellants are the trustees of the freeholders and commonalty of the town of *Huntington*, who are a body corporate : *Timothy Conklin, Phineas Carll, John Oakley, Samuel Skidmore, Richard Conklin*, and *Nathaniel Biggs*, were some of the incumbent trustees of the town, at the time when the bill was filed ; and *Isaiah Jarvis, Silas Smith*, and *Jesse Wickes*, were lessees and tenants of the islands in question, under the trustees of *Huntington*.

By their answers, the appellants admitted that the letters patent issued to *Wm. Nicoll*, in 1688, and alleged, that the islands described therein, are certain islands, called the *Fire-Islands ;* and expressly deny, that *Captree-Island, Oak-Island*, and *Grass-Island*, are included in, or intended, by the said letters patent ; that the ancestors of the respondent took possession of the *Fire-Islands*, as the islands described and intended by the said letters patent ; that those islands have been held and enjoyed by the ancestors of the respondent, and are now held by him, without any interruption or adverse claim ; and they denied, that either *Wm. Nicoll*, the patentee, or any other ancestor of the respondent, ever took possession or had possession of *Captree-Island, Oak-Island*, and *Grass-Island*, or either of them, in any manner whatever. They also denied that the respondent, or any of his ancestors, ever had any right or title to those islands.

They also alleged, that the gut described in the said letters patent, as commonly called *Huntington* gut, is a large inlet of water, situated *easterly* of the islands in question ; and that the *Fire-Islands* lie directly between that gut and the lands of the respondent, at the river

IN ERROR.
•••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

called *Conetqunt ;* and that the islands in question, all lie on the westerly side of that gut.

They further stated, that on the 30th of *November*, 1666, letters patent were issued by the governor of the colony of *New-York*, to the town of *Huntington*, by which the governor granted, ratified, and confirmed, all the lands within the limits and bounds therein expressed, which limits and bounds are particularly set forth ; and they insisted, that *Captree-Island*, *Oak-Island*, and *Grass-Island*, are included and comprehended within those limits, and that, thereby, those islands vested in the town of *Huntington*, as their property ; and that the town of *Huntington*, thereupon, took possession of those islands, and enjoyed them as their own :

• That on the 2d day of *August*, 1688, the governor of the colony of *New-York*, issued other letters patent to the town of *Huntington*, in which the letters patent of the 30th *November*, 1666, are recited and confirmed ; that in these letters patent, the limits and bounds of the town, are described and established to be precisely as in the first letters patent ; that the freeholders and inhabitants of the town were thereby incorporated by the name of the trustees of the freeholders and commonalty of the town of *Huntington*, and that all the ordinary powers and privileges of a corporation were granted to them ; that thereby the title to *Captree-Island*, *Oak-Island*, and *Grass-Island*, which were thus comprehended in both letters patent, vested in the corporation, and has remained in them ever since ; that on the 5th *October*, 1694, other letters patent were issued by the governor of the province of *New-York*, to the town of *Huntington*, by which the first letters patent are recited, and the bounds of the town are altered : And they alleged, that from the time of issuing the said several letters patent, the inhabitants of the town, and after the letters patent of the 2d *August*, 1688, the trustees of the town, and others under them, have constantly until this time, occupied and enjoyed *Captree-Island*, *Oak-Island*, and *Grass-Island*, by entering thereon, at pleasure, by fishing

IN ERROR.
•••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

and fowling thereon, and particularly by cutting the grass growing thereon ; such being the only acts of possession of which those islands are susceptible ; that for the last twenty years the trustees of the town have had possession of the islands in question, by leasing them from year to year, and by receiving the rents ; and that, during that period, the tenants of the town have enjoyed those islands and have taken the profits thereof ; that from the time when the several letters patent were issued to the town, until about eighteen years ago, the possession and enjoyment of the islands in question, by the trustees and inhabitants of the town were peaceable, uninterrupted, and exclusive, and without any claim of adverse title ; and that they are able to prove their possession for the last sixty years, by living witnesses ; that the ancestors of the respondent all resided near the islands in question, and well knew that they were claimed and enjoyed by the town of *Huntington,* and that none of them ever claimed those islands until lately; but that, on the contrary, some of the ancestors of the complainant, expressly disavowed and disclaimed any pretence of right or title to those islands ; that about eighteen years ago, one of the ancestors of the respondent first set up a claim to the islands in question ; but that no suit was ever brought and prosecuted to effect, by any of the ancestors of the respondent, in support of such claim.

The answers of the appellants having been put in, the respondent moved, in *September,* 1806, that an injunction should issue according to the prayer of the bill. This motion was opposed, and, after argument, was refused by the chancellor. In *April,* 1807, an order was made, that the respondent might examine his witnesses in perpetuation of their testimony.

In the *May* term, 1807, of the supreme court, *Jesse Wickes* obtained an order of that court, for the trial of the action brought by him against *Elias Leek,* by a special jury, and that the special jury should have a view of the premises in question. The jury was accordingly struck, notice

IN ERROR.
•••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

of trial was given, and preparations were made for the view, and for carrying the cause down to trial, at the next circuit court, to be held in the county of *Suffolk*, on the 30th *June*, 1807.

Immediately after the rule for a special jury and a view had been obtained, affidavits were made in the suit in chancery, on the part of the respondent, stating, that the questions of title were the same in all the suits at law, and also that the trial of any one of the suits would be attended with great expense. Upon these affidavits, the chancellor was again moved, in *May*, 1807, on the part of the respondent, for an injunction to restrain the prosecution of the suits at law ; and, in opposition, an affidavit was read, on the part of the appellant, stating, among other things, that many, and the principal number of the witnesses of the appellants, whose testimony was material to establish their title to the islands in question, were very aged and infirm, and not likely to live long, and that the testimony of those witnesses could not be supplied or obtained from any other source, if they should die before their examination.

On the 4th *June*, 1807, the chancellor granted an order, that an injunction should issue to restrain *Jesse Wickes from proceeding to trial in any of the suits at law, at the circuit court then next to be held in the county of Suffolk ;* and the injunction was issued, and served accordingly.

From this order, the defendants below appealed to this court.

In *May*, 1807, another affidavit was made on the part of the respondent, stating, that the respondent was owner of a large and valuable real estate, more than sufficient to pay all the costs and expenses, which might accrue in consequence of this suit, and that *Selah Strong* and *Richard Udall*, his guardians were believed to be material witnesses for him in the suit.

Upon this affidavit, the respondent, in *May*, 1807, applied to the chancellor for an order, that the guardians of

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

the respondent might be examined as witnesses for him in this suit.

This motion was opposed: and it appeared from an affidavit, on the part of the appellants, that before the commencement of this suit, five several suits at law had been instituted by the guardians of the respondent, one of which had been determined, as before stated; that the other four were still depending in the supreme court; that two other suits were depending in the supreme court, brought by lessees of the town of *Huntington*, against persons who had acted under the authority of the respondent's guardians; that those suits were, in fact, defended by his guardians, and that, besides the costs of suit in all these actions, which were great, the other expenses were very considerable.

The chancellor, on the 3d *June*, 1807, granted an order, that the respondent should have leave to examine *Selah Strong* and *Richard Udall*, his guardians, as witnesses for him in this suit.

From this order, the defendants below appealed to this court.

The reasons for granting these orders, were thus given by

The CHANCELLOR. Upon a view of all the circumstances of the case, I could not discover that the trial intended, could definitively determine any point in controversy between the parties, or that it could tend to establish a right in either. The trespass, which was the object of the suit, was avowedly trifling; and the whole subject was before me, the defendants having submitted to treat it as an equitable object of jurisdiction. There is some resemblance, as to the nature of the interests of the several contending parties, between this case and those which have generally induced a court of chancery to entertain a bill of peace; though there are some peculiarities, which make it essentially variant from an usual controversy respecting boundaries. But without determining how far these considerations ought to be carried generally, on the merits disclo-

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

sed, and without intimating an opinion on those merits, I thought proper, on the ground that the cause was brought before me, and that a trial could not produce any beneficial result to either party, to award an injunction to restrain a trial at the ensuing circuit in *Suffolk.* An opportunity was also thus given to review the question, should the cause continue pending until another circuit in that county.

A motion was also made, on the part of the complainant, to examine his guardians, as witnesses for him.

To this, it was objected, that they were not competent.

1. Because they were parties to the record.

2. Because they were responsible for the costs.

3. Because they had evinced a spirit of litigation, by the improvident commencement of several suits.

The rules of evidence are, in general, the same in equity, as at law; but the rigid forms of the courts of common law, will not readily yield to the modifications which this court can adapt to the promotion of substantial justice.

It is every day's practice in chancery, to disregard the nominal parties to a suit, and to test the competency of witnesses, by their real relation to the objects in controversy; and the mere circumstance of being a party, does not always, of itself, disqualify. Indeed, from the forms of the court, the guardians are not alleged to be parties. The complainant prosecuted solely. His guardians are merely introduced to show, that it is with their approbation and sanction, that he prosecutes for the rights he claims.

It is certain, that *guardians, as such,* have no personal or immediate interest, in claiming the object of controversy for their wards. They are, from the trust confided to them, required to perform every beneficial act, in promotion of the interests of their wards. They are responsible, as trustees are who have no interest coupled with their trust, for its abuse; and the improvident prosecution of unsuccessful suits, may be deemed, under certain circumstances, such an abuse. But though they may eventually be liable for the costs accrued in such suits, in an

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

account with their ward, I think they would not be so to the defendants, unless the property of the ward should prove incompetent to satisfy them. In this case, it was shown, that there was property abundant to respond.

Some strict principles have, perhaps, attached to this subject, from the doctrine of former ages, when the ward composed a species of property of his feudal guardian ; when beneficial rights were vested in the guardian, as connected with the wardship, and when every step, promotive of the interest of the ward, yielded some advantage to the guardian ; but I can discover no other possible interest, that a guardian can *now* have, but that derived from his liability to costs; and as there are no express authorities to prevent a determination on general principles, the decision of the two first points must, in a great measure, be governed by those general principles,

The case of an executor at law, which was urged, as bearing a strong analogy to the present case, appeared to me to be very different. A defendant executor is made a party to the judgment, in the first instance, by the *si non* clause : His own particular interests are never brought into view, as distinguished from others beneficially interested in the testator's effects, where he prosecutes or defends in case of a debt or duty claimed by, or against him, as executor. He appears in the record to be, and in legal contemplation is, the absolute owner of the personal interests of the testator.

In the case of *Man* v. *Ward*,\* Lord *Hardwicke* lays it down, that a nominal trustee, who has no legal interest in the estate, may be examined in equity.

\* 2 *Atk.* 228

A guardian is not different, in point of interest, from such a trustee. Both represent the interests of others ; both are answerable to those whose interests they represent, for an abuse of their trusts ; the trustees, in many cases, primarily ; the guardian more remotely and contingently ; but the occurrence of the contingency, supposes *laches*, or fault, which, in legal intendment, is not, *prima facie*, supposed to exist.

IN ERROR.
........
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

From these considerations, I was of opinion, that neither the first nor second objection were well taken.

The third objection required an investigation, far beyond what appeared to me a proper limit on the occasion. It would have been necessary to have been possessed of the whole ground of controversy, to have enabled me to pronounce definitively on the expediency of bringing the suit in question.

A repetition of the violation of the supposed rights of their ward, might impose on the guardians the duty of prosecutions. The number of suits was an evidence of the persevering disposition of both parties; but afforded no indisputable criterion from which a correct judgment could be formed.

I was, therefore, on the whole, of opinion, that the guardians might be examined, saving all just exceptions.

*Sanford*, for the appellants. 1. The bill of the respondent had two objects in view; to perpetuate testimony; and to establish a title. If it had been confined to the first object, there could have been no objection; but he has attempted to establish a *legal* title in a court of chancery. An injunction is auxiliary to the relief sought by the bill; and if no relief ought to be granted, then no injunction ought to issue. It will be said, that this injunction was limited and temporary, and that no appeal will lie from a temporary order; but the statute,* gives to all persons aggrieved by any sentence, judgment, decree, or order of the court of chancery, or court of probates, a right to appeal from the same, or any part thereof, to this court. Though the order was temporary; yet if it was wrong, and the party felt himself aggrieved by it, he had a right of appeal, which cannot be taken away; he has a right to have the question, as to the propriety of such an order, heard and determined by this court. If the appeal be not allowed, the chancellor may, by granting temporary injunctions, from time to time, prevent the proceedings at law, and leave the appellants without remedy. The controversy between the parties is purely

* *Laws N. Y.* v. 1. p. 185. sect. 8,

legal, founded wholly on a question, as to the legal title to certain lands. But we shall be told, that the bill of the respondent is *a bill of peace.* But bills of peace are filed where the controversy, in its origin, possessed some ingredient of equitable jurisdiction, as fraud or accident. The case of *Leighton* v. *Leighton,\** was of this nature. Another set of cases is, where, though the question be merely legal, yet, in order to prevent useless and endless litigation, a court of equity will grant a perpetual injunction, after repeated and successive trials at law.† I find, however, no case, in which the court of chancery in *England* has interposed, that there had not been, at least, five ejectments, or trials at law.‡ There is no instance where an injunction has been allowed after a single trial at law. In *Barefoot* v. *Fry,§* there had been five actions of ejectment, and two bills in equity.

A third class of cases, in which bills, in the nature of bills of peace, are allowed, are those where a person claims a right against a great number of individuals, claiming under the same general right and the court of chancery interferes, to prevent a multiplicity of suits, by obliging the party to abide by the event of a single issue. Where the controversy is between two persons, no such bill has been allowed.¶ It can make no difference that the appellants are a corporation. They make, in law, but one person. A bill will not lie to have an issue to ascertain the boundaries between two parishes.\*\*

In the case of *Welby* v. the Duke of *Rutland,*†† it was decided, that where a bill is brought to establish a legal title, and for a perpetual injunction, it is the established practice of courts of equity to dismiss the bill, though the defendant may have answered, and insisted on his title. This is a case in point, and the reasoning there stated is conclusive. But it may, perhaps, be said, that the appellants, by answering, admitted that it was a case properly within the cognisance of the court of chancery;

*IN ERROR.*
........
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

\* 1 *P. Wms.*
671. 4 *Bro. P.*
*C.* (2d ed.) 379.

† 1 *Mod.* 10. 4
*Bro. P. C.* 373.

‡ 2 *Bac. Abr.*
(*Eject.* I.)

§ *Bunbury,* 156.

¶ 2 *Atk.* 483,
*Mit. Plead.* 127,
128. 1 *Har.*
*Ch. P.* 104—106.

\*\* 1 *Bro. C. C.*
40. 2 *Anstr.*
389.

†† 2 *Bro. P. C.*
39.

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

and that if they meant to object to the jurisdiction of that court, they ought to have demurred. Had the appellants demurred, they would have admitted the facts in the bill ; they were compelled to answer, and ought not to be prejudiced thereby. It is an universal rule, that the want of jurisdiction may be urged in any stage of the cause. The admission of the parties cannot give jurisdiction, if the court has none. The defendant waives no right by answering ; and he may make the objection, afterwards, as well as if he had demurred.* Where the complainant is not entitled to relief, the bill ought to be dismissed.† Though an injunction may be granted when the bill is filed, yet, when the answer of the defendant comes in, and all the equity in the bill is denied, the injunction ought to be dissolved. Resting the case on the bill and answer, therefore, no injunction ought to have issued ; and it was granted, in this case, after the answer was filed.

* 2 Bro. P. C. 39.
† Mitford, 100.

The power of granting injunctions is discretionary, and ought not to be exercised in a doubtful case. For what purpose, should the parties be put to the expense and delay of a suit in a court of chancery, when, after all, the rights of the parties must be tried by an issue at law ? Their rights may as well be tried in the action of ejectment, already pending in the supreme court, as by an issue directed by the court of chancery.

The application of the respondent to perpetuate his testimony has been granted, and the evidence is preserved ; but the appellants cannot perpetuate their testimony ; for a bill for that purpose is never allowed, until the party, who makes the application, has prevailed at law.‡ Nor are the appellants aided by the late act,§ for it excepts the case where the adverse party is an *infant*. Aged and infirm witnesses, by a rule of the supreme court, may be examined, *de bene esse*, in a cause pending ; but their testimony cannot be used in any other suit, so that the respondent has a decided advantage over the appellants, whose testimony may be lost, and the respondent is inte-

‡ 2 Atk. 391.
§ 30 sess. c. 130.
Laws, v. 5. p. 147.

rested to create delay for that purpose. Delay is victory to the respondent, but ruin to the appellants.

2. The second order directs the *guardians* of the respondent to be examined as witnesses. I contend that they are incompetent witnesses, and ought not to be examined. They are interested ; and by a settled rule of the law of evidence, are, therefore, incompetent. If the respondent fails in his suit, the guardians will be liable as trespassers ; for they entered and took possession of the premises in question, and received the rents and profits. If they succeed, it will be for the benefit of their *ward ;* but should they fail, they will be liable for the *mesne profits.* The *guardians* are in possession, and claim to hold as tenants under their *ward ;* and it is a rule of law, that a tenant can never be a witness in support of the title of his landlord.*.

Again, the guardians are personally liable for the costs of a suit at law,† and also in equity.‡ That the ward may be possessed of a large estate does not remove the legal objection. The guardians are liable, in the first instance, and though they may, afterwards, be reimbursed, they are still incompetent. Bail, though indemnified by their principal, cannot be witnesses for him. The affidavit, on which the order was founded, states that the infant had real estate sufficient to pay all costs ; but that estate cannot be touched during his minority. Neither the guardians, nor any other persons, have a right to apply it, towards the payment of costs.§ It has been repeatedly decided, both in courts of law, and equity, that a guardian was an incompetent witness, because liable to costs.¶

If a guardian, or *prochein amy,* be a necessary witness, the proper course of proceeding is to have his name struck out of the bill, and another person appointed.** Some cases in equity may be found, where mere trustees or nominal parties, are allowed to be witnesses; but wherever the trust is coupled with an interest, a trustee, though not a party, is not admitted as a witness.†† Where a trustee is made a defendant, he has been allowed to be a witness, because

IN ERROR.
. . . . . . .
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

* 1 *Johns. Rep.* 159. 340. *Cowp.* 621. 1 *Str.* 632.
† 2 *Sellon,* 67. 439. *Barnes,* 128. 1 *Str.* 548. 1 *Wils.* 130. 1 *Term,* 491. *Cro. Eliz.* 33.
‡ 1 *Eq. Ca. Ab.* 72. *Prec. in Cha.* 376. 2 *Str.* 708. *Mosely,* 47. 86. 1 *Atk.* 570. 3 *Atk.* 401. 511. 547. *Mit. Pl.* 26. *Prac. Reg.* 349, 350. 1 *Har. Ch. Prac.* 309. 474. 2 *Eq. Cas. Abr.* 238. sect. 18.
§ 1 *Vesey,* 461. 2 *Vesey,* 23.
¶ *Bac. Abr. Ev.* B. *Esp. N. P.* 704. 2 *Str.* 1026. *Cases temp. Hardw.* 302. 1 *Str.* 574. 1 *Atk.* 453. 2 *Atk.* 48. 228. 2 *Vezey,* 38. 41. 3 *Atk.* 511. 547.
** *Harrison, C. P.* 475. 2 *Str.* 708.
†† 3 *Atk.* 95. 605. 3 *P. Wms.* 181.

*IN ERROR.*
••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

* *Har. Ch. Pr.*
285. 2 *Atk.* 228.
† *Eq. Cas. Abr.*
225. *Gilb. Cas.*
98. *Pres. in Cha.*
411. 1 *P. Wms.*
195. 1 *Vernon,*
230. 1 *Har. Ch.*
*Pr.* 389. 1 *Dick.*
382.   2 *Dick.*
650. 799.

compelled by the complainant to be a defendant ; and the complainant is not allowed to get rid of a witness, by making him a party.* But there is no case, in which a plaintiff, or complainant, has been examined as a witness, for himself, or his co-plaintiff, or co-complainant. No man can be a witness in his own cause.† The only exception is, where a complainant has been examined as a witness, on the application of the defendant, who might have obtained a discovery by a cross-bill. The guardians, in this case, as it regards the defendants, are the parties complaining. Further, the order for their examination, is absolute. It ought to have been, with a saving of all just exceptions.

*Riggs* and *Benson*, for the respondent. The true question, before the court, relates to the propriety of the order for an injunction. The suggestion, that the bill is to be dismissed, in whole or in part, is, therefore, extraordinary. The bill of the respondents is in the nature of *a bill of peace ;* its object is to have all the matters in litigation settled by one suit, in the court of chancery, and thereby to prevent a multiplication of suits, in the courts of law. Another object is, to perpetuate testimony, and to this is joined a prayer for relief.

The ground of the objection to the jurisdiction of the court is, that the controversy between the parties is purely a question of law, properly cognisable in the courts of common law, and that there is nothing to afford a ground for the interposition of a court of chancery. This objection might have been good on a *demurrer* to the bill ; but if instead of demurring, the party answers to the bill, and contests its merits, this court will support the jurisdiction of the court of chancery.

† 2 *Caines' Ca-*
*ses in Error,* 1.
*See the opinion*
*of Thompson,* J.
p. 40. and of
*Kent,* Ch. J. p.
51—56.

It was decided in the case of *Ludlow* v. *Simond,*† that where a defendant, instead of demurring to a bill, for want of matter of equity, answers to the merits, he thereby submits to the cognisance of the court, and equity ought to retain the cause, provided, it is competent to grant relief, and has jurisdiction of the subject matter.

It will not be pretended, that the subject matter of this suit is not within the jurisdiction of either court. It is an established principle of a court of equity, that it will take cognisance of a cause, properly triable at common law, in order to prevent a multiplicity of suits. It is on this principle, that bills of peace are sustained in that court.* But it is said, that equity interferes only, where there are a great number of persons on one side, claiming under a general right, and that here there is a corporation. But every member of that corporation may commit a trespass; for every corporator, according to the answer of the appellants, has a right to go on the islands, to cut grass, to fish, and to fowl, at his pleasure. If so, the litigation would be endless, as every such trespass would give rise to a suit.

Again, we contend, that this order is not such an one, as can be appealed from, even if it were now in force. The 32d article of the constitution, speaks of the judgments of the supreme court, and of the decrees of the court of chancery; and the statute organising this court,† declares, that if any person is aggrieved by any sentence, judgment, decree or order of the court of chancery, he may appeal. The constitution manifestly intended some judgment or decree, affecting the rights of the parties, not those orders, occasionally granted, in the progress of a cause, which do not, in the least, touch its merits. Though the word " order," is used in the statute, still it must mean such an order as will affect the merits of the cause. An order for an injunction is a mere preparatory or remedial process, and is no more the ground for an appeal, than an order for a *subpœna*, for a writ of *ne exeat*, for taxing costs, for bringing money into court, or any other step, which may be requisite, in the ordinary course of proceedings. If the word " order," is to be taken in its most extensive and unlimited sense, then this court may sit to hear, decide upon, and reform, every point of *practice*, in the court of chancery. But it is a general principle, that one court never interferes in the practice of another. Each

*IN ERROR.*

.......

ALBANY,
Feb. 1803.

Trustees of
Huntington
v.
Nicoll.

* 1 *Vernon,* 22.
266. 2 *Vernon,*
301. 326. 1 *Atk.*
281. 2 *Atk.*483,
484. 1 *Chan.*
*Cas.* 272. *Gilb.*
*For. Rom.* 195.
*Mit.* 127, 128.

† *Laws N. Y.* v.
1. p. 182.

*IN ERROR.*
••••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

court exclusively regulates its own practice. It certainly could not have been the intention of the framers of the constitution, or of the legislature, that this high court should sit to hear appeals from such orders.

Again, the order was *functus officio ;* it had expired before the appeal was entered in this court. It would be strange, formally to reverse an order which did not exist. But considering it as an existing order, it was perfectly proper. It was not that a perpetual injunction should issue, or to hinder the appellants from receiving the rents and profits. It was to prevent useless litigation, and to save the respondent from heavy costs, in suits, which could never put a final end to the controversy. The court of chancery is the peculiar guardian of infants, and will always protect their persons and rights. When, therefore, it was apparent, that the property of the respondent was to be wasted, in the expenses of endless law-suits, it was proper for that court to interfere, and stay the suits at law, in order, that the whole subject matter should be finally decided in one suit.

Next, as to the order of the 3d *June,* 1807. The guardians, in case the suit should fail, will not be liable for the rents and profits : They can be liable for costs merely. They are not parties ; they claim no right. The infant, *Nicoll,* is the party. The guardians may, or may not, be ordered to pay costs. They will not be liable to pay costs, unless they have acted improperly or wantonly. This is different from an action at law ; there the costs follow, of course, on the judgment. In chancery, costs are always discretionary, and may be awarded or not, according to circumstances ; according to the *conscience,* not according to the power of the court.* In conscience, no guardian or trustee, ought to pay costs, unless, in case of gross negligence or misbehaviour. If costs are awarded, they will be directed to be paid out of the estate of the infant, not by his guardian, personally. The objection is rather to the credit, than to the competency of the witnesses. Though the guardians are nominal parties on the record, they may

*Gilb. For. Rom. 205. 2 Atk. 551, 552. 3 Atk. 235.*

be examined as witnesses. A co-defendant, when he has no interest in the subject matter of the cause, may be a witness.* A guardian has been allowed to be examined as a witness in the *English* court of chancery.†

*Hoffman,* in reply. 1. No order of the court of chancery can be made, from which the party aggrieved has not a right of appeal. All the errors of that court, and of the supreme court, are corrected here. It is said, that orders for injunctions are matters of practice ; but rules of practice apply to all cases. The order for an injunction affects only the particular case. If the master grants an injunction, and the party against whom it is issued, applies to the chancellor to dissolve it, and he refuses, it is his decision, from which an appeal may be entered. If a party has a legal right to damages in an action of trespass, and an injunction is issued to prevent his recovery, his right is affected ; he is aggrieved, and ought to be allowed to appeal.

It is objected, that the merits of this cause have not been heard in the court of chancery ; but they never can be examined in that court, since they exclusively belong to the cognisance of a court of law. It is on this ground that we contend that the bill ought to be dismissed, for want of equity. The chancellor, at any stage of a cause, may dismiss a bill, for want of equity ; and what he can do, may be done by this court. Any person may file a bill in chancery, and call upon the defendant for an answer ; but if, on examination, it contains no equity, it ought to be dismissed. This power of dismissing the bill, in any stage of the cause, is a salutary power ; for why suffer the parties to proceed, through all the stages of a long and expensive litigation, when, at last, the bill must be dismissed, for want of equity ?

The respondent, it is true, seeks also to perpetuate testimony ; but it is for the very purpose of a trial at law. The whole bill ought, therefore, to be dismissed ; but even if the respondent is entitled to this part of the

IN ERROR.
........
ALBANY,
Feb. 1808.

Trustees of Huntington
v.
Nicoll.

* 1 *Johns. Rep.* 576, 577.
† *Wyatt's Prac. Reg.* 419. *Tothill's Rep.* 109.
2 *Dickens,* 781.

IN ERROR.
•••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

prayer, it ought to be dismissed, so far as it seeks relief. What ground of equity does the bill contain ? It asks the interference of the court of chancery, to prevent a multiplicity of suits at law. After repeated trials in actions of ejectment, it is true, that perpetual injunctions are sometimes, granted. Here, there has been but one trial at law. It may be, that at the first trial the merits were not fairly examined. New evidence may have been since discovered.

Again, another ground for a bill of peace, is, where there are a number of persons claiming distinct rights in the same subject, and where there must, necessarily be a multiplicity of suits. The cases, however, are chiefly those concerning incorporeal hereditaments, or between a lord of a manor and his tenants, relative to distinct manorial rights. The present case is different. It is a suit by *Nicoll* against the corporation of *Huntington*, claiming in its corporate right. If every member of the corporation is to be considered as a distinct person, and to be separately sued, then it would be necessary that corporations should be always sued in a court of equity. A corporation may be sued as one person. If the respondent thinks proper, to sue every corporator, the multiplicity of suits is his own choice. He might, by a single suit, in a *writ of right*, put an end to the controversy.

The respondent having made his election to proceed at law, ought not to be allowed to enjoin the appellants, until he has discontinued the suits he has brought, and paid the costs.

Again, it is important to the appellants, that the witnesses should be examined, *viva voce*, in open court, where the jury may have an opportunity of judging of the capacity, discernment, and recollection of the witnesses, who are to testify concerning transactions long past.

2. The order for the examination of the guardians of the respondent, *Nicoll*, is certainly erroneous. Their names are on the record, and whether their interest be direct or contingent, they are equally incompetent. There

are stronger grounds for the objection, in the case of guardians, than in that of bail. Bail may be indemnified, or may surrender the principal, and be thereby discharged. If the guardians are personally liable for the costs, if the suit should fail, the objection, on the ground of interest is insurmountable. They may, no doubt, be indemnified by the infant, but in the first instance, *they*, not the infant, must pay the costs. An *infant* is never ordered to pay costs, in a court of chancery ;* and in a settlement of accounts, between an infant and his guardians, it is a matter of discretion with the chancellor, to allow the costs paid by the guardians, or not. If the infant is not liable to pay the costs, the defendants must pay them, or they must be paid by the guardians. The guardians are, in truth, parties. They must swear to the bill, in order to obtain an injunction. So, if an infant answers by a guardian, he must be sworn. The answer of a guardian does not bind the infant, because it is not his answer. Guardians, then, are to be considered as parties. Trustees, who are not voluntary, but indispensable parties to a suit, are excused from costs ; but guardians are not indispensable ; the infant may sue by his next friend, who would, undoubtedly, be liable for costs.†

· 'Again, the guardians are co-plaintiffs with the infant ; and a co-plaintiff is never examined as a witness, either in law, or in equity. The case of a co-defendant stands on a different ground, for they are not voluntary parties.

The case of *Walker* and *Thomas*, cited from *Dickens*,‡ was that of a guardian, *ad litem*, of a defendant. But those reports are the loose notes of a register of the court, and are not respected as high authority.§

· In the case of *Bebee* and others v. *The Bank of New-York*,¶ *Olcott*, who was ordered to be examined as a witness, was a co-defendant, and a bankrupt against whom no relief was sought, his name being used merely as a matter of form.

*IN ERROR.*

.......

ALBANY, Feb. 1808.

Trustees of Huntington v. Nicoll.

* *Wyatt's Prac. Reg.* 145. 212. 222.

† *Wyatt*, 349, 350.

‡ 2 *Dick.* 781.

§ *See* 1 *Scho. & Lefroy's Rep.* 240 *observations of Ld. Redesdale.*

¶ 1 *Johns. Rep.* 529.

*IN ERROR.*
•••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

VAN NESS, J.   This is an appeal from two interlocutory orders of the chancellor, the first, enjoining against proceeding at law, in certain suits in trespass, pending in the supreme court ; and the second, authorising the examination of *Selah Strong* and *Richard Udall,* the guardians of the respondent, as witnesses.

To decide on the first ground of appeal, it is necessary preliminarily to examine, whether this is an order from which an appeal will lie.

The statute, regulating the proceedings in this court, gives the right of appeal from *any order* of the court of chancery.   That *all* orders, however, made in the progress of a cause in that court, are the subjects of appeal, is a proposition to which I cannot assent.   That there are some orders from which there is no appeal, will, I think, not be denied.   If it were practicable, it would be very desirable, by a decision of this court, on some proper occasion, to establish a rule on this subject, whereby the profession might, hereafter, be governed.   In the present case, however, this is not required.   The order under consideration was temporary in its terms.   It merely suspended the proceedings at law, until after the then approaching circuit, to be held in the county of *Suffolk ;* after that time, its operation ceased, and it was no longer a subsisting order.   Although it had not expired, at the time the appeal was entered, it is now no longer in existence, and the question is, whether, from such an order, an appeal will lie ?

The power of granting injunctions is confided to the discretion of the court of chancery, to be exercised in all cases, when that court shall deem it necessary, for the furtherance of justice.   It is a very necessary, and, when exercised with wisdom, a highly beneficial power.   In the court of chancery, as in other courts, it frequently happens, that interlocutory orders are made, without the advantage or opportunity of nice and critical examination.   Temporary injunctions, therefore, are sometimes granted for the purpose of a more deliberate examination of the grounds,

upon which the application is founded. They are also, sometimes, granted in doubtful cases. It will be recollected, that an injunction does not affect or conclude the merits of a cause. It merely stays the proceedings at law, until the merits are finally discussed and determined. In all cases, therefore, where an appeal is brought from an order of this description, this court should be well satisfied, that the order had been made, clearly and palpably contrary to the equity of the case, and the rules and practice of the court.

These considerations have led my mind to the conclusion, that the present appeal ought not to be favoured. The injunction has not operated to the injury of the appellants ; for even admitting that they might have prevailed in the trials, which were enjoined, the amount of their recovery must have been trifling. But if we suppose, for a moment, that the chancellor committed an error in granting this temporary injunction, which has long since expired, what relief can we give the appellants ? We cannot reverse the order, for that no longer exists. There is nothing upon which the judgment of reversal could operate. To pronounce a nugatory and idle judgment, which we have not the power to enforce, is incompatible with the solemnity and dignity of judicial proceedings. It has been said, however, that if there is no appeal from orders of this kind, that the chancellor may always elude an appeal, by modifying his orders, so as to suffer them to expire before a decision on the appeal can take place. This is an argument which this court will not listen to. We are not to presume, that a public officer will corruptly exercise the power with which he is invested for the public good ; and much less ought we to found a decision upon odious and disreputable presumptions against the integrity of a judicial officer. A reasonable confidence in public officers, is necessary to the very existence of civil government. I forbear any further remarks on this argument ; and regret that it was thought necessary to urge it.

*IN ERROR.*

........

ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

IN ERROR.
••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

All the relief that we could afford in this case, then, would be to declare that the chancellor ought not to grant another injunction ; or, in other words, to pronounce a cautionary or advisory judgment. This would be as illegal and unprecedented, as it might prove unjust. The respondent might disclose new facts to the chancellor upon which it would not only be expedient, but manifestly his duty, to enjoin new trials at law, and upon which, could they be exhibited to this court, in the first instance, we would ourselves grant an injunction.

I am, therefore, of opinion, that on this ground the appeal, as to the first order, ought to be dismissed.

On the argument of this cause, the question, whether the respondent had, in his bill, disclosed a case, of which the court of chancery could take cognisance, was fully discussed ; and it is, perhaps, expected, that this court will give an opinion upon that point. I shall proceed, therefore, to its examination.

In the first place, however, it is necessary to remark, that if this court should be of opinion, that the facts stated in the bill, present a proper case for equitable interference, it follows, as a matter of course, that the proceedings at law must be enjoined. The latter is a necessary consequence of the former.

Before I consider the law, relating to this part of the subject, and for the better application of it to the case before us, a very brief statement of some of the facts, is essential.

The respondent claims title to the premises in question, as part of the lands described in an ancient patent, granted to his ancestor ; and it is admitted, that if this grant comprehends the premises, that the respondent has a perfect title thereto.

The appellants deny, that this grant comprehends the premises, and insist, that the title is vested in the trustees of the freeholders and commonalty of the town of *Huntington*, under certain grants made to *them*, but which are posterior in date to that under which the respondent

claims. The premises in dispute are three islands, which, in the patent to the ancestor of the respondent, are described as situate in the bay or sound that is between *Long-Island* and the beach. These islands are uninhabitable, and incapable of being cultivated ; they are, therefore, uninclosed, and produce nothing but a species of wild grass, called sedge, which, for a long time, has been cut at *certain seasons of the year*, by the inhabitants of the town of *Huntington ;* and this is the chief, if not the only use which has been, or can be made of them. It is evident, from this statement of facts, that the premises in question, are not in the *actual* possession of either of the parties ; and that the legal possession is in the party having the right. The principal question, therefore, between the parties is, whether the grant to the ancestor of the respondent comprehends the premises. This is a question of fact.

*IN ERROR.*

ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

I will now, as briefly as possible, examine the subject ; and I think I shall be able to show, that under all the circumstances, this is a proper case for the interposition of the court of chancery.

Courts of law, in some cases, have not the power of putting an end to vexatious and oppressive litigation. Actions of ejectment, and in cases where the property is situated as these islands are, actions of trespass may be repeated again and again, until the sinews of litigation are exhausted, and until the resources, but not the spirit, of the parties fail. This is, perhaps, a defect in the common law system; which is supplied, in certain cases, by the more enlarged and superintending powers of a court of chancery.

In some cases, a party is permitted to establish his rights in a court of chancery, in the first instance, without having previously done so, by trials at law. In others, it is necessary, first to establish his rights at law, before a court of chancery will interpose. In examining, with some attention, the cases cited on the argument, and other authorities, I am satisfied that the present case is within

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

the principle of several of them ; though I admit, that there is no case which, in all its parts, is analogous to the present. But it is enough, if this comes within the reason of those cases, where equity has taken cognisance of the legal rights of parties, with a view of terminating endless and ruinous litigation. It is time that we should, for the purpose of rendering the administration of justice more perfect and complete, take the lead, instead of waiting for precedents, in order to follow them. Courts of equity in *England*, have entertained causes, where the remedy at law is not clear, certain, or adequate ; or where the remedy was difficult. So they have entertained bills to prevent a multiplicity of suits, by directing the rights of the parties to be ascertained upon issues framed by the court, instead of obliging the plaintiff to sue a number of persons separately, at law, where each suit would only determine the particular right in question, between the plaintiff and defendant, in that suit : Though in such cases, equity will not interpose, when the right is disputed between two persons only, until it has been first tried and decided upon, at law. But how many trials are necessary to be had, before the court of chancery will interfere, must depend upon the sound discretion of the court. This seems to me to be the fair deduction from all the cases on this subject.

In the instances where the court of chancery has taken cognisance of the mere legal rights of the parties, it has not assumed the authority to try and decide such rights. This has been uniformly and properly referred to the courts of law, where all the trials are had, where the titles of the parties are investigated, the proofs exhibited, and the witnesses examined. All the court of chancery does, is to decide how long the litigation at law shall continue. After a sufficient number of issues have been tried, satisfactorily to determine the right, an end is put, by a perpetual injunction, to further contest : And the party, having thus established his right at law, is quieted and protected in the enjoyment of it. I cannot but consider this as among the most beneficial and salutary powers of that court.

*IN ERROR.*
........
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

Courts of law are not equal to this purpose. Their mode of administering justice does not reach the evil ; and it is for this reason, that the court of chancery is called to their aid.

In the case before us, what is the infant to do, in order to be quieted, admitting the right to be with him ? It is said he may bring an ejectment. True, he may do so ; but it will be seen, that the moment he resorts to that mode of investigating the right, he admits that he is out of possession. He has once prevailed, in an action of trespass, against a person, who justified under the title of the town of *Huntington ;* and in that suit, he must have shown himself to have been in possession, or he would have been nonsuited. Is it just, then, to force him to an action, in which he must abandon a very important advantage, which the party in possession always enjoys ? But suppose he should bring an ejectment, and recover ; will that settle the right, and terminate litigation ? By no means. A recovery in one action of ejectment, is no bar to the bringing of another. The parties may proceed, as often as they please ; and, very frequently, he who can longest bear the expenses of litigation, will, in the end, prevail.

It has also been said, that the respondent may bring a a writ of right. But by resorting to that remedy, he admits that he is disseised. There, as in the action of ejectment, he is obliged to yield an advantage, which ought not to be required of him. If he admits that he is disseised, (which, by bringing a writ of right, he undoubtedly does,) at what time is that disseisin to be deemed to have taken place ? I cannot see why, according to his own admission, it is not to be carried back to the date of the patents to the town of *Huntington.* If so, he gives up his cause, because the statute of limitations would be a complete bar to his recovery.

But it is said, that the trial of the actions of trespass, may settle the controversy. The answer to this is, that it may not have that effect ; and, after all the suits now

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

pending between the parties, have been tried, the controversy may be as far from being terminated, as it is at this moment. Unless some mode of putting an end to this controversy can be devised, after the right has been determined at law, the infant may as well abandon his claim at once. He is obliged to maintain an unequal contest. The appellants command the resources of the whole town of *Huntington ;* but the infant must rely exclusively upon his own means. The expenses of a trial, it is stated, are not less than 500 dollars, and that in a suit, in which, if he should be successful, he, probably, will recover only nominal damages.

There is another ground, on which I think the chancellor ought to entertain this bill ; a ground clearly within some of the cases which have been cited. I am strongly inclined to think, that all the freeholders of the town of *Huntington* have a right to enter upon these islands, and cut the grass without the license of the trustees. The grant of 1694, is to certain persons therein named. These persons made a body corporate, and have perpetual succession. But in relation to the property in question, as well as the other property mentioned in the grant, the members of this corporation are, in their natural, not corporate capacity, mere naked trustees for the freeholders of the town, and may be compelled to execute this trust, by their *cestui que trusts,* at any time. I very much doubt whether, if the freeholders should enter upon the island, and cut the grass, the trustees could maintain an action of trespass against them.

The grant is to the trustees, to the use of the freeholders, as tenants in common. I do not see why the statute does not execute the use. If so, the freeholders of the town have the legal estate. But on this part of the case, I do not mean to express a decided opinion. It is sufficient for the purpose of giving the court of chancery jurisdiction of this case, that there is colour for this construction of the grant.

IN ERROR.
.......

ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

Should this construction of the grant, however, be correct, a case is presented to us, where the chancellor has an undoubted and acknowledged right to interfere. But suppose the legal estate to be in the corporation. A corporation, as such, is not liable to an action of trespass. The only use which can be made of this property, is to cut the grass and herbage growing upon it. This, as is stated in the bill, is cut by as many of the inhabitants of the town of *Huntington*, as have occasion for it, either with, or without the consent of the trustees. Every one of these, if the right is in the respondent, are trespassers ; and a field is thus opened for endless, fruitless, and ruinous litigation.

I am of opinion, therefore, that this is a case proper for the court of chancery, and that under the superintendance of the chancellor, such trials at law ought to be awarded, as will be necessary to determine the right ; and that being once done, that he should direct the controversy to end, by such a decree as may be necessary for that purpose.

2. The other order from which there is an appeal, is that permitting the examination of the guardians as witnesses. The examination of witnesses in the court of chancery, is always subject to just exceptions to their competency. If they are interested, the party against whom their testimony is to be used, may object to their competency, when their testimony is offered ; and although I am strongly inclined to the opinion, that the guardians are not competent witnesses, yet I think that the appeal, in this case, is premature. The testimony of the guardians, may turn out not to be material ; or the same facts may be proved by other witnesses, and the testimony of the guardians may never be offered or relied upon ; and should it be relied upon, the question of their competency may always be urged against its admission.

I am of opinion, therefore, that the appeal, as to this order, ought also to be dismissed.

SPENCER, J. It cannot be necessary to repeat what has been said in other causes, as to the right of appeal from

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

orders of the court of chancery. The right is given by statute, and when this appeal was interposed, the order was an existing one. An order for an injunction, after answer, necessarily implies, that in the opinion of the court, there is a case before it, presenting grounds on which it may eventually proceed to act ; and it must be presumed, that the bill and answer have both been examined and considered. There being, then, a basis for the appeal, this court has become properly possessed of the cause ; and though there would be an absurdity in annulling an order which has expired by its own limitation ; yet as the merits of the case have been considered, we are called upon to make such a decree, as the justice of the case, and the propriety of preventing further litigation, may require.

With this view, and under these ideas, this court has in various instances, proceeded to a final decree, where the appeal has been merely from an order for a feigned issue ; but supposing the time prescribed for the trial had elapsed, when the appeal came on to be heard, it would be no objection to entertaining the appeal. In those cases, however, of orders for feigned issues, the court of chancery had given no opinion on the merits ; but the merits had been brought into view, on the argument for an issue. In the present case, the merits of the bill and answer must have been the topic of argument, on the application for an injunction. This case, therefore, comes within the principles of those cases, and is different from that of *Deas* v. *Thorne* and others,* in which there not only had been no examination of the merits, but some exhibits were yet to be proved. I can conceive no difficulty or impropriety in examining the case, on its merits, with a view of ascertaining, whether the court of chancery had any cognisance of the cause, beyond perpetuating the testimony of the respondent's witnesses.

This leads me to inquire, in what cases a court of equity can take cognisance of a question, purely of a legal nature, and appertaining to the courts of common law,

* *Ante*, p. 548.

under the notion, that the bill is a bill of peace, or in the nature of a bill of peace.

*IN ERROR.*
.......
ALBANY,
Feb. 1808.
Trustees of
Huntington
v.
Nicoll.

That this case involves matters of equity, as contradistinguished from strictly legal principles, has not been pretended. The multiplicity of suits, and the great expense attending their trial, together with the fact that the respondent has had one verdict, are the grounds relied on, to give the court of chancery jurisdiction of the cause.

It is of the utmost importance, that the lines of demarcation, between the courts of law and of equity, should not be confounded and violated. Hence it has grown into a maxim, that a court of equity has no jurisdiction, where the courts of common law are sufficient for the purposes of justice; and where a plaintiff can have as effectual and complete remedy in a court of law, as in a court of equity : To this maxim there are but few exceptions. Courts of equity take cognisance of questions, involving legal principles only, and which are triable in the common law courts, in order to put an end to oppression, and to prevent a multiplicity of suits, by way of a bill of peace. There are only two cases, in which this is done.

The first is, where there have been repeated trials, and a satisfactory determination at law, on the point of right; as in actions of ejectment and trespass, which, not being final, without the interposition of a court of equity, there would be no end to the oppressiveness of litigation.* 

* *Bro. P. C.* 373.

The other case is, where one general legal right is claimed against several distinct persons, and where each suit would determine only the particular right in question, between the plaintiff and defendant, in that suit.†

† 2 *Atkyns,* 391, 483. 1 *Bro. P. C.* 40. 572. 6 *Bro. P. C.* 575.

The cases illustrative of the latter subject of equitable jurisdiction, are, where a right of fishery is claimed by a corporation, throughout the course of a considerable river, and is opposed by the lords of manors and owners of land adjoining; and where there exists disputes between lords of manors and their tenants, and between the tenants of one manor and another.

IN ERROR.
••••••••
ALBANY,
Feb. 18v8.

Trustees of
Huntington
v.
Nicoll.

The respondent's case comes within neither of these principles : Not within the first, because here has been but one trial and one verdict ; and it would be unprecedented, to consider a single verdict in trespass, decisive of the right between the parties : Not within the second exception, because the bill and answer admit that the trial which has passed, and those which are pending, involve the question of title to the islands ; and the verdicts in which the individuals claim under the trustees and the respondents, are as operative upon them, as though the suits were between them and the trustees, and might, in the same manner, be given in evidence on future trials. There is no pretence for such a bill, as the present, where a right is in dispute between two persons only, (and this, in effect, is such a case,) until that right has been tried and decided upon, repeatedly and satisfactorily, at law. The respondent, then, in my opinion, has been premature in exhibiting his bill, and it ought to be dismissed. In coming to this conclusion, I am influenced by the wish to save expense, and to prevent an useless litigation in chancery, and, perhaps, a future appeal to this court.

I ought, perhaps, to notice a suggestion, that the property, being uninhabitable, it is impossible for either party to bring an action of ejectment, or a writ of right. If this were conceded, it would prove nothing ; for the trials in trespass as effectually try the title, as an ejectment, or any real action. But the proposition is not maintainable. The acts of cutting the grass and removing it, are such acts of possession, as would warrant the making the persons exercising such acts, defendants in ejectment.

It has been objected, that the appellants should have demurred to the relief, and that, by answering, they have submitted to the jurisdiction of the court, and are now too late to make such an objection. The case of *Welby* v. *The Duke of Rutland*,* is a decisive answer to that objection ; and it establishes, that where there is a want of equity in the complainant's bill, an answer is no waiver of the objection. In that case, the bill was dismissed, on the

* 6 *Bro. P. C.* 575.

ground of a want of equity, notwithstanding the defendant had answered.

*Mitford* lays down the rule correctly ; " for in general," he says, " if a demurrer would hold to a bill, the court, though the defendant answers, will not grant relief upon hearing the cause."* So in the case of *Ludlow* v. *Simond,* both the *Chief Justice,* and Mr. Justice *Thompson,* limit the effect of answering, instead of demurring, to cases only where the subject matter is within the jurisdiction of the court.

I am inclined to the opinion, that the appeal from the order to examine the respondent's guardians as witnesses, is premature ; for it does not follow, that those depositions would ever be used as evidence. Should they be so used, it would then be time to take the exception.

The result of my opinion is, that the court of chancery had no jurisdiction in this cause, beyond the perpetuating the testimony of witnesses, as this was not a case where the trials at law would not bear on the question of right between the appellants and respondent ; and as there has not been such repeated trials, as reasonably to settle the question of title. Under these impressions, I think the bill should be dismissed, with the costs of the court of chancery, to be paid to the appellants.

KENT, Ch. J. This is an appeal from two interlocutory *orders* of the court of chancery ; the one order of the 4th of *June* last, directing an injunction, to restrain *Jesse Wickes,* one of the appellants, from proceeding to trial, at the then next *Suffolk* circuit, in three several actions of trespass, pending in the supreme court ; and the order of the 3d of *June* last, directing, that the respondent, *Nicoll,* have leave to examine his two guardians as witnesses.

1. The injunction order was special, and confined to the then ensuing circuit court in *Suffolk.* It has, therefore, long since spent itself ; and a preliminary question very naturally occurs here, whether an appeal from such a temporary order can be sustained. An appeal from such an

*IN ERROR.*

ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

* *Mit. Pl.* 100.

*IN ERROR.*

••••••

ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

order is without precedent, and it appears to me to be without sense or meaning. What use can there be in such an appeal ? To reverse an order, which has long since expired, is absurd. It would be doing an idle act, which does not comport with the gravity of a court of justice. It is one of the maxims of the common law, and which is a dictate of common sense, that the law will not attempt to do an act which would be vain, or to enforce an act which would be frivolous. *Lex nil frustra facit. Lex non cogit ad vana seu inutilia.* An application of this rule lately occurred in the supreme court.

In the case of *Teel* v. *Sweeting*, (2 *Johns. Rep.* 184.) a motion was made by the attorney-general, for leave to file an information, in the nature of a *quo warranto*, against one of the supervisors of *Onondaga* county, who was alleged not to have been duly elected into office. But the court observed, that as the office of the supervisor would expire in *April*, and before the remedy prayed for, could have effect, (for the motion was made in *February*,) it would be idle and useless to grant the motion, and it was, on that ground, refused. I cite this decision, for no other purpose, than to show, that it has hitherto been considered as a settled principle, that a court will not undertake to exercise power, but when they exercise it to some purpose.

If we were to follow the suggestion of one of the appellants' counsel, and add to the decree of reversal, that they have liberty to proceed to trial, we should be granting nothing, for the appellants have that leave already. There is no existing order or injunction to restrain them. He undoubtedly intended, that our order should have the effect of declaring, that no future injunction was to be interposed. But I much question the propriety of such an exercise of power, by this court. We are not a court of original jurisdiction. We have no right to regulate the court below, touching the future progress of a cause. We cannot make a mere advisory decree, as to future cases. Our province is to review, and correct acts which

*IN ERROR.*
. . . . . . .
ALBANY,
Feb. 1808.
Trustees of
Huntington
v.
Nicoll.

are past. We are not to anticipate future mistakes, or to prescribe for the exercise of a future discretion. How can we know, but that circumstances may hereafter arise, in this very cause, by unforeseen casualties, or extraordinary combinations, which would render it the indispensable duty of the court of chancery to restrain the proceedings at law, and which this court would approve of, if the point was judicially before us?

But then, it is said, the court of chancery may, perhaps, restrain another trial, by a like temporary injunction; and that this may be repeated, *toties quoties*, and the party be remediless, if such injunctions cannot be appealed from. I answer, in the first place, that such suppositions are not to be indulged. The fair and legal intendment is, that no further injunction will issue without legal cause. The chancellor has informed us, why the injunction issued was temporary. He did it for greater caution, and that the parties, as well as himself, might have an opportunity to examine and reflect on the subject, before he determined whether he would, or would not enjoin the causes in the supreme court, until the final hearing before him. The appellants ought to have waited the result of that deliberation. How could they know, but that the application for a further injunction would be denied, and if it should be, then certainly this appeal has been vexatious and useless. The appellants have their fit and final remedy. They ought to press for a final decision in chancery upon the merits of the bill. This would not subject them to any very grievous delay; and, indeed, of what consequence is a little delay in a suit, brought to recover damages for a petty trespass, not amounting, perhaps, to five dollars. It is admitted, that the aged witnesses might, at any time, be examined, *de bene esse*, under a rule of the supreme court. After a decision upon the merits, either by a decree for a perpetual injunction, or by the award of an issue, it would, then, be the proper time for the party conceiving himself aggrieved, to appeal. The

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

bringing the cause to a hearing is, then, the proper remedy against the repetition of injunctions. But we are not to anticipate any undue exercise of this power in the court below. A reasonable confidence must be entertained, that every court will exercise its discretion soundly; and the case before us, is a striking instance of caution in the application of the power to grant injunctions.

Without, therefore, looking into the merits of the order of the 4th *June*, I am of opinion that, as to that order, the appeal ought to be dismissed. The order being dead, long before the cause came into this court, and the period of its existence being stated in the order at the time it was granted, are facts, which form with me an insurmountable objection to the appeal.

But other views were taken of this part of the cause, by the appellants' counsel.

One of them admitted, that the injunction was proper, if the cause was properly attached in equity. If the court of chancery did right in taking cognisance of the cause, the injunction followed as a matter of course; though, instead of being limited to one circuit, it ought to have continued until the final hearing of the cause. The counsel were, therefore, led to deny, that there was any ingredient of equitable jurisdiction in the case, and to urge, that the bill ought now to be dismissed. My answer to this suggestion is, that the question, on dismissing the bill, does not come properly before us. That question involves the whole merits of the cause, and which have never been discussed and decided upon in the court below. This court made a very sound decision, a few days ago, in the case of *Deas* v. *Thorne* and others, which was, that on an appeal from an interlocutory order of the court of chancery, made before a hearing of the merits, this court would not assume original jurisdiction, and examine the merits ; but would confine itself to the order. If this decision is to be respected and observed, we cannot, consistently, examine the merits of the bill in the present case. The granting of the temporary injunction of the 4th *June*,

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

may, perhaps, be considered as a decision on the merits of the bill ; but this is not the just inference from that order. It was a mere step of precaution ; a preliminary measure for the occasion, and implies, that the merits had not then been understood or considered. The same argument might have been used in the case of *Deas* v. *Thorne*. Every interlocutory order may, in one sense, be considered as an opinion, that there is some colour for the action ; but that is not the consideration upon the merits, intended by our decision, and I am perfectly satisfied, that we cannot, consistently with that decision, give a final opinion on the merits of the bill.

If, however, the court should not concur with me, in this opinion, and should enter into the merits of the bill, I will, then, state the reasons why I think the cause ought to be permitted to proceed. I do not mean by this, that I have formed any definitive opinion, as to what ought to be the decree of the court of chancery. Such an opinion cannot safely be formed, until after the proofs shall have been taken and considered. But viewing the cause as it appears before us, I think that there is good colour, at least, for sustaining the bill, and that it would be proceeding without precedent, to dismiss a bill after an answer has been put in to the merits, and before those merits have been brought to a hearing in the regular course of the court.

It has not been usual to exhibit a bill in chancery, for quieting a title between two individual claimants, until after several verdicts at law. I do not know, however, that it has been deemed requisite to require any precise number of trials at law, before such a bill of peace can be sustained ; and I am inclined to think that there is no positive rule existing as to the number of verdicts which must precede the bill of peace.

In the case of *The Earl of Bath* v. *Sherwin*, which was decided in the house of lords, near a century ago, (1 *Bro. P. C.* 166.) the counsel for the appellants, asserted before the lords, that there were many precedents where

*IN ERROR.*
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

courts of equity granted perpetual injunctions, for quieting inheritances after two trials, and where only one of those trials had been at law. Each case will probably depend, in a degree, upon its peculiar circumstances. These bills of peace were very reasonably introduced to supply a defect of jurisdiction in the courts of law, which permit actions of ejectment to be brought without end, and such actions, therefore, in the hands of a rich adversary, might become engines of oppression and ruin. In many cases, therefore, public justice will loudly call for these bills. But the present bill is not strictly a bill of peace. Its object is not to quiet a title, supported by the single verdict at law, but its object is to prevent a multiplicity of actions, equally vexatious and oppressive to both parties, by asking for the aid of the court of chancery to have the title tried under its superintendance, so that there may be a final decision. And when a bill is brought on this ground of preventing a multiplicity of vexatious suits at law, the question, as to the number of verdicts obtained, does not arise, and cannot be material.

In the case of *Tenham* v. *Herbert*, (2 *Atk.* 483.) Lord *Hardwicke* observed, that " there were some cases, in which a man might, by a bill of this kind, come into chancery first, and there were others where he ought first to establish his right at law. Where a man sets up a general exclusive right, and where the persons who controvert it with him, are very numerous, and he cannot, by one or two actions at law, quiet that right, he may come into this court first, and the court will direct an issue, to determine the right, as in disputes between lords of manors and their tenants, and between the tenants of one manor and another; for in these cases, there would be no end of bringing actions of trespass, since each action would determine only the particular right in question between the plaintiff and the defendant." These observations are entitled to peculiar weight since they come from so great a magistrate as Lord *Hardwicke*, who presided for 20 years in the *English* court of chancery, and during all that time

IN ERROR.
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

only three of his decrees were appealed from, and they were affirmed. The question, then, is, whether the present case does not come fairly within the spirit and principle of this doctrine. The bill states, that the rival claims to the three desolate islands, has produced many law suits, the greater part whereof had been tried and determined in justices' courts. That in 1802, the respondent's guardians brought three several actions of trespass, all of which were removed into the supreme court, and there brought to issue ; that one of those actions was brought to trial, at the *Suffolk* circuit, in 1805, and from one of the affidavits in the cause, it would appear to have been tried at an expense to the parties of 500 dollars and upwards. It further appears, that there are two more actions of trespass ready for trial, in which the respondent is plaintiff, and three more actions of trespass, in which the appellants are plaintiffs, and that the actual damages sustained by the trespass, in either case, does not, perhaps, exceed five dollars in amount. If these five actions of trespass, now at issue in the supreme court, are to go down to trial, the expense, judging from the former trial, may be computed at about 2,500 dollars for an actual damage of, perhaps, 50 dollars, a circumstance which would certainly reflect no credit upon the justice of the country. The bill further charges, that the trustees of *Huntington*, and the inhabitants of that town, declare it to be their intention from time to time, to enter, and to encourage others to enter upon the islands, and carry away the grass ; and the answer admits and avows the determination. Whether every freeholder and inhabitant of the town of *Huntington*, may not, without special license from their trustees, enter and cut grass on these islands, is a question arising upon the construction of their grant, and upon which I am not now prepared to give an opinion. If that should be the case, suits at law might be as numerous as the inhabitants of that town. From the peculiar state of the islands in controversy, the general interest and claim of the inhabitants of *Huntington*, and the numerous suits to which

*IN ERROR.*

........

ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

these contending claims have already given birth, I am strongly impressed with the fitness and expediency of some jurisdiction like that assumed by the court of chancery, in which such a litigation may be placed in a train for a solemn and final decision. An attempt seems to have been made by the counsel, to excite our jealousy, as if the court of chancery was extending the boundaries of its jurisdiction, and taking cognisance of matters which belong to courts of law. But, in my opinion, such suggestions might well have been spared. The object of the equity power, in such cases, is to prevent endless and destructive suits at law. This object is as benign, as it is rational ; and those who love justice and hate oppression, would, I should think, feel disposed to cherish, rather than destroy such a power. It is not true, that when the jurisdiction of such peculiar cases, is transferred from the courts of law to the court of chancery, that the parties lose the benefit of a *viva voce* examination of their witnesses, and of a trial by jury. It is well known, that such cases are always sent back again, to be tried at the circuit court, under a feigned issue. Whether the issue comes from the court of chancery, or the supreme court, the trial at the circuit is the same ; but then, there is this pre-eminent advantage of having the cause tried under the superintendance of the chancellor, that he can render any one trial final and conclusive upon the right in litigation ; and in this respect, chancery supplies the manifest defect of jurisdiction in a court of law. If one trial, either from the report of the circuit judge, or from its own view of the testimony, does not satisfy the judgment of the court of chancery, it will order a second trial at law ; and when one or more verdicts shall be satisfactory, as to the right in question, then the court of chancery will perpetually enjoin all further law suits, and put an end to the contest.

The law, upon this head, is extremely well summed up, by Lord Ch. Baron *Gilbert*, (*Forum Romanum*, 195.) who observes, " that there is an injunction to prevent multiplicity of suits, as where many suits are depending, and are.

IN ERROR.
........
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

likely to happen from one and the same thing. The court will here interpose, and grant an injunction; they will direct a proper issue to try the whole, and all the rest shall be bound by the verdict, or else there might be twenty actions, and as many verdicts, where one proper issue ends the whole, and it is only directing one issue to try many more."

After this explanation of the object of the jurisdiction of the court of chancery in these cases, and after a review of the state of the present vexatious controversy, I am inclined to the opinion, that there are, at least colourable, if not strong grounds for the present bill, and that it would be premature to dismiss it, before its merits have been duly discussed and considered in the court below.

Another reason why I think the bill sustainable is, that the respondent does not appear to have a clear and adequate remedy at law. The remedy, by an action of ejectment, or a real action, would be attended with circumstances somewhat precarious and doubtful. This difficulty arises from the nature of the subject in dispute, consisting of three islands, incapable of being inhabited or inclosed. If the respondent was to bring the ordinary action of ejectment, he must make out in proof, that the person against whom he brings his suit, was in actual possession of the premises, or he would be nonsuited upon the trial; and how would *Nicoll* prove, that the trustees of *Huntington*, or any inhabitant of that town, was in possession of those islands? If acts of entry to cut grass, make a person a tenant in possession, then the islands are as much in the possession of one party as the other, for they have mutually entered and cut grass, and there are now mutual actions of trespass pending in the supreme court. The truth is, there is not, and cannot be any actual occupancy of these islands, by any party, beyond these occasional acts of entry, to cut grass or sedge. The law, however, determines this point, by casting the possession of the islands upon the party who has the legal title. The right, in this case, draws with it the possession, and if *Nicoll* admits that the

*IN ERROR.*
•••••••
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

trustees of *Huntington* are in possession of the islands, he may, possibly, admit away his cause, since, they cannot be in possession, in any other way, than by having the title: And if the trustees of *Huntington* are admitted to have been in possession at the commencement of the action of ejectment, the next inquiry would be, when did that possession commence. A possession for 20 years, is a good title in ejectment ; and if the town of *Huntington* was in possession of the islands when the suit was brought, it would be very difficult for *Nicoll* to controvert a possession in them of 20 years. But supposing that these difficulties, arising from the admission of the possession in the trustees of *Huntington*, could be surmounted, yet it is unreasonable to drive *Nicoll* to an action of ejectment, because he would, thereby, part with a legal advantage. A jury of *Suffolk* county have recently determined in favour of his right. This appears to have been a very solemn and contested trial. He has, therefore, the best claim to be deemed in possession, and the hazard and difficulty of bringing the ejectment ought to be thrown upon his adversaries.

Again, if he brings the ejectment, he must not only admit the possession out of him, but his title must be made out clearer than that of the defendant ; because, in all doubtful cases, it is the practice of the courts, to instruct the jury, to leave the defendant where he is, undisturbed. The whole burthen of making out a good title, is cast upon the plaintiff in ejectment ; and until that be done, the defendant sits still and protects himself by his possession.

The same doubts and difficulties would arise, if the respondent was to attempt to bring a writ of right, a remedy which was recommended to the respondent, by the appellants' counsel. He must admit the inhabitants of *Huntington* to be the actual tenants of the freehold ; and he must, on his part, show an actual *seisin* in himself, or in his ancestor, within the last 25 years.

To conclude, then, my observations on this part of the subject, I am of opinion, that the appeal as to the order of the 4th *June*, ought to be dismissed :

*IN ERROR.*
.......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

1. Because the order was temporary, by the terms of it, and expired before the appeal could be heard.

2. Because we cannot grant any relief in this case, as reversing the order would be useless, and prohibiting a new injunction would be unlawful.

3. Because we cannot, on appeal, from such a preliminary order, decide on the merits of the bill.

4. Because, admitting that we could decide on the merits, we ought not to dismiss the bill, as it is brought to prevent numerous and vexatious suits at law, and to put the cause in a way for one final trial, and decision ; and because, a fair, equal and adequate legal remedy to either party, is, at least, doubtful, owing to the singular situation of the lands in dispute.

I shall next proceed to examine briefly, the appeal from the order of the 3d of *June*, directing that the respondent should have leave to examine his guardians as witnesses. The objection to this part of the appeal is, that it is premature. There is no *gravamen*, until the witnesses have been examined, and an attempt made to take their depositions. Perhaps, they never will be examined. The respondent may think it best to waive the examination, or if the witnesses be examined, he may think their testimony unimportant, and may consent to suppress their depositions. To object to this order would be as premature as it would be to object to the issuing of a *subpœna* to bring a witness into court, who is alleged to be interested in the cause. The general rule of practice, on this subject, is plainly laid down in *Harrison's Chancery Practice*, (v. 1. p. 589.) which is, that when publication has passed, if either party conceive any of the witnesses to be incompetent, he may make out his objection, and then the deposition of the witness so impeached, will not be permitted to be read at the hearing. The examination of witnesses in chance-

*IN ERROR.*
......
ALBANY,
Feb. 1808.

Trustees of
Huntington
v.
Nicoll.

ry, is always *de bene esse*, and with a saving of all just exceptions ; and whether it be so expressed, or not, in the rule, it is always understood.

I am of opinion, accordingly, that there is no ground, and, indeed, that there is no precedent for an appeal from such an order, and that the appeal ought, upon every point, to be dismissed.

The majority of the court concurring in this opinion, it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the petition of appeal, presented by the appellants, be dismissed : and that the record and proceedings brought here, be remitted with this decree, to the court of chancery, to be proceeded upon, according to law.

Appeal dismissed.

☞ *Mr. Justice* THOMPSON, *was absent during this session of the Court of Errors, from indisposition.*

END OF THE CASES IN ERROR.

\*\*\* The cases of *Sands* and others v. *Codwise* and others, *Rogers* and wife v. *Cruger* and others ; *M'Vickar* and others v. *Wolcott* and others ; and *Tillotson* v. *Cheetham,* on account of their great length, are necessarily postponed to the next volume.