# Wheeling.

## COVILLE & GARBER *v.* GILMAN *et al.*

Decided May 4, 1878.

(Absent JOHNSON, JUDGE.)*

A verbal contract is made between A. and B., which A. claims was an agreement on B's part, to sink an oil well for him, and to be paid therefor a reasonable price out of the first oil, pumped from the well, after which the well was to belong to A. exclusively. B. claims, that he was to sink the well, pay himself for the same out of the first oil obtained; and thereafter the parties, A. and B., were to be equal partners in operating the well. After B. had bored the well, and occupied it sufficiently long, in A's judgment, to more than pay all the expenses of the boring, A. brought an action of assumpsit for the oil, B. had sold, to which B. pleaded nonassumpsit, and filed as offsets the costs, which he had incurred in boring the well. The jury found a verdict for A. for a certain sum. And after sometime A. brought another action of assumpsit against B. for oil, pumped and sold since the institution of the first suit. B. then files a bill, setting forth his version of the contract, and that a partnership in all the oil, pumped from the well, existed between him and A., praying for a dissolution of the partnership, a settlement of the partnership accounts, and asking an injunction, to prevent the collection of the judgment, obtained by A., and also the further prosecution of the second action of assumpsit. Proof was taken, showing the existence of the partnership, as claimed by B. HELD:

I. On motion to dissolve the injunction, so much of it, as enjoined the collection of the judgment, should be dissolved; as the verdict and judgment conclusively es-

*Counsel in the cause below.

tablished, that the oil, for the proceeds of which this judg-
ment was rendered, was exclusively the property of A.

II. This verdict and judgment did not establish, that there
was no partnership in the oil, pumped after the institu-
tion of the first suit, even though it were proven ever so
clearly, that there was and is no claim, that any partner-
ship in any of the oil existed, except such as might have
been formed by the original contract; and that, in the trial
of the common law suit, B. defended himself by claiming,
that this original contract created a partnership in all the
oil, pumped from the well, and obtained from the court
an instruction, that if the jury believe, such partnership
existed, they must find for the defendant; and that, as
the question of partnership or no partnership was not
*directly*.involved in the pleadings, it cannot, so far as oil
not sued for in that suit is concerned, be regarded, as con-
clusively determined by the verdict of the jury and judg-
ment of the court, though it be shown by evidence, it
was the controverted fact, on which the verdict of the
jury must have been based. Nor is this verdict even
evidence of the non-existence of the partnership.

III. The court ought not to dissolve the injunction, prohibit-
ing the prosecution of the second action of assumpsit,
till the hearing of the cause, as the question of partner-
ship or no partnership ought to be settled in the chancery
suit, the determining of it there settling it finally, and
preventing a multiplicity of suits; as neither the common
law suit pending nor others, which might be brought from
time to time, would conclusively determine this question.

Appeal from and *supersedeas* to a decree of the cir-
cuit court of Ritchie county, rendered on the 25th day
of April, 1876, in a cause in chancery, in said court then
pending, in which Corrydon Coville and Jonathan Gar-
ber, partners in business under the firm name of Coville
& Garber were plaintiffs, and J. C. Gilman and others
were defendants, granted on the petition of said plaintiffs.

Hon. James Monroe Jackson, judge of the fifth judi-
cial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following state-
ment of the case :

The facts shown by the record in this case are, that

the West Virginia Oil and Oil Land Company owned certain lands in the State of West Virginia, and gave to J. C. Gilman, as he says, a verbal permit, to enter on a certain lot in Ritchie county, a portion of their land, and on it to sink a well, with the understanding that Gilman was to have the privilege of pumping oil from the well, after it was finished, for ninety days, and after that to continue to so pump oil, as long as the company chose to permit him to do so, the company to receive, as a rent for the same, one-third of all the oil so pumped. This agreement further provided, that whenever the company chose to revoke this permit, after this ninety days, they could do so, by paying to Gilman all the expenses, he had incurred in sinking the well, and prior to the time he commenced pumping, a statement of which was to be filed in the office of the company by Gilman, so as to enable them to know exactly, what were their costs and expenses, in case they desired to exercise these privilege of repossessing themselves of the lot and well.

In the fall of 1872, Gilman says, he informed Corrydon Coville, of the firm of Coville & Garber, of this contract with this company, and made a contract with him, verbally, to sink this well for him, for which he was to be paid a reasonable price, the payment of such reasonable price to be by applying to its payment the reasonable rent of an engine, boiler, tanks and counterwheel and two tanks, which belong to Gilman, which had been used by Coville & Garber, and which was to continue to be used by them, till the well was finished, and the balance, due for sinking the well, to be paid, when finished, by Gilman, or to be paid out of the first oil, pumped from the well.

Coville & Garber state this contract thus: That they were to sink the well, and were to pay and bear all the expenses of sinking the same, furnish machinery, &c., and were to take the risk of obtaining oil therefrom; they were to be entitled to pump oil therefrom, until enough should be produced, to pay the cost of boring

providing and equipping said well, including machinery, tanks, &c, and the cost of pumping and producing said oil; and they and Gilman were to be equal owners of said well, and of the machinery and equipments, necessary for running the same; and when these costs and expenses were fully repaid, then Gilman was to have an equal share with them in the production, and they were to bear with Gilman the expenses of running the same equally.

This contract, they agree, was verbal, and they say, that Gilman represented, that he had procured the right from said company, to bore this well on this lot, but did not state, that this oil company had a right to retake possession of lot and well at any time, which right, they now understand, they claim. This is denied by Gilman, who says, that Coville knew just what his contract with this oil company was, he having a similar one with them

The well was bored by Coville & Garber, who claim, that the actual cost of boring it was $1,713.00, excluding the use of tank and engine, which, it was claimed by Gilman, ought not to be charged, as Coville & Garber were using an engine and tank, they got of Gilman, at other wells, though some one else, Coville & Garber say, notified them not to settle with Gilman for their use, as they did not belong to him. In addition to this $1,713.00 Coville & Garber say, that the use of their engine and tank was worth $557.00, and Gilman claims, that the use of the engine and tank, he owned, used by them, was worth $533.00. Gilman contends, that the boring of this well cost only about $1,300.00.

Both parties agree, that Coville & Garber, after finishing the boring of this well, commenced working it about December, 1872, or January 1, 1873, and have worked it ever since; that up to June 11, 1874, they had pumped from this well 1,941 barrels and 24 gallons of oil, one-third of which they paid as rent to the West Virginia Oil and Oil Land Company, and the balance, 1,294 barrels and 16 gallons, they disposed of for their

own use; they claiming, that it was insufficient to pay the costs of sinking the well and pumping the oil; they refused to pay any of the proceeds of it to Gilman; the costs of the pumping, they state, was $1.00 per gallon, while Gilman claimed, it was less than half that sum.

The fair value of this 1,294 barrels and 16 gallons, Coville & Garber say, was $2,913.00; and that was about what they got for it. And Gilman claimed, that it was worth more than twice that sum, that is $6,748.75. Gilman claimed, that this 1,294 barrels and 16 gallons had greatly overpaid Coville & Garber for the sinking of the well and pumping the oil, and that, by the contract, all the oil beyond that belonged to him exclusively after the payment of the rent. And he brought an action of assumpsit, in the circuit court of Ritchie, against Coville & Garber, for the balance due him for this 1,294 barrels and 16 gallons of oil, left after paying the rent, also for $533.00 for the use by Coville & Garber of his engine and tank, crediting his claim by only $2,200.00, as the costs of sinking the well and pumping the oil up to June 11, 1874, leaving a balance due to him, as he claimed, of $5,081.75.

The time, when this action of assumpsit was brought, does not appear by the record before us; but it was probably shortly after June 11, 1874. The defendants, Coville & Garber, put in the plea of non-assumpsit, and filed, as offsets, a bill of particulars, setting forth in detail all the expenses, incurred in boring this well, amounting to $1,776.05; but in this bill of offsets no charge was made for the use of engine or tank; also in their bill of offsets they claimed for pumping $1.00 per gallon, carrying it out as $2,060.00, when it should have been apparently $1,941.60.

This action was tried at the April term, 1875. What evidence was submitted to the jury, does not appear in the record in this cause, now before us; though it was certified and made a part of the record in this assumpsit suit. But the defendants, Coville & Garber, in their

depositions taken in the cause, now before us, admit that they were witnesses in said assumpsit suit, and proved substantially the facts, above stated, as claimed by them ; and that they were partners with Gilman in the subject matter of this action of assumpsit ; and the defendant in this cause, now before us, in his answer on oath states, that at the instance of the counsel of Coville & Garber, the court in said action of assumpsit instructed the jury, " that if they believed from the evidence, that the plaintiff and defendants were partners in the well, they must find for the defendants, as partnership matters were only to be settled by courts of equity."

1878.
Special Term.
Coville & Garber
v.
Gilman.

The jury rendered a verdict for the plaintiff for $985.20 ; and the court rendered judgment therefor, with interest from April 30, 1875, and the costs. The defendants' motion for a new trial was overruled ; and a bill of exceptions taken, in which the evidence was certified, but which has not been brought into the record in the cause, now before us.

This judgment was, for value received, assigned to George Loomis, Okey Johnson and R. S. Blair, and execution issued and levied on the personal property of the defendants, Coville & Garber. They then filed their bill in said circuit court, August 21, 1875, claiming that they formed a partnership with Gilman, the terms of which were such as have been before stated to be their claim, and the boring of the well under this contract of partnership, the cost of which they allege was $2,260.36, as shown by an exhibit filed with the bill. This exhibit is almost an exact copy of the bill of offsets filed in the action of assumpsit, except there is added to it, for use of engine, $325.00, and for tank of four hundred and sixty-four barrels, $232.00. They set forth that the cost of pumping the oil was $1.00 per gallon, and add as an additional item, &c., cost for pumping, and incidental expense for drawing sucker rods, $5.00 per month, for thirty-one months, $155.00, which was also not in the offsets filed in the action of assumpsit.

They state that the whole amount of oil pumped, till the time the bill was filed, was two thousand eight hundred and fifty-four barrels and six gallons, each barrel being forty gallons, of which the royalty or rent, which had all been paid by them, was nine hundred and fifty-one barrels and fifteen gallons, leaving belonging to the partnership, one thousand nine hundred and two barrels and thirty-one gallons; that this had all been sold by them, and brought $3,779.55, according to their estimate, while the expenses of the boring of the well, and expenses of pumping up to that time had been $5,294.51, leaving the partnership in their debt $1,514.96; that though these were partnership matters, which could only be settled by a court of equity, yet Gilman had improperly brought this common law suit, which they being unable to defend at law, he had recovered against them this judgment of $985.20, which he had assigned as before stated, and an execution on which the assignees had levied on this property, though in fact the partnership was largely in their debt, when this judgment was rendered; and that Gilman had also instituted in said circuit court another action of assumpsit against them, for the productions of this well since the institution of his former action of assumpsit, which last action was still pending.

They state, that Gilman made to them the misrepresentation before stated about the terms, upon which he had gotten the privilege of sinking this well. They also allege in this bill, that Gilman had given a deed of trust on all his property for more than it is worth, and that he is insolvent, and that he is further indebted to them $208.00, for money paid by them at his request, to Wm. Burk, and being insolvent, if said judgment was allowed to be enforced against them, without offsetting what he owes them, they could never be reimbursed, on account of Gilman's insolvency.

The prayer of this bill is, that the sheriff of Ritchie county, Gilman and the assignees of this judgment may

be made defendants, and required to answer the bill on oath; that Gilman be required to assign to them one-half of his interest in the well and lot; that the accounts and transactions between them and Gilman be settled; and Gilman be decreed to pay them what may be found due from him; and that, in the meantime, the enforcement of said judgment and the prosecution of the pending action of assumpsit may be enjoined; and for general relief. This bill was sworn to; and the injunction asked was granted.

Gilman demurred to this bill, and also filed an answer, to which the plaintiffs replied generally. In the answer he denies the existence of any partnership, and claims that all the oil produced from the well is his individual property, setting forth their contract, as stated heretofore it was claimed by him to be. He admits that the rent due to the oil company has been paid. He denies that a correct statement of either the expenses of sinking the well, or of pumping the oil, has been made in the bill; says they were far less than is pretended; and he also denies that the plaintiffs received for his oil sold only $3,779.55, but claims that it was much more; and that they are largely in his debt.

He admits obtaining the judgment in the action of assumpsit, and its assignment, as stated; and he files with the bill a copy of the offsets, filed in the action of assumpsit, which exactly correspond with the demand for expenses of sinking the well, now claimed by the plaintiffs in their bill, except in the two charges for engine and tank, which have been now added for the first time; and he claims the engine belonged to him. He asserts, that all the matters, now set up in the bill, were fairly tried in the action of assumpsit, and the jury, at the instance of Coville & Garber's counsel, were instructed, "that if they believed from the evidence, that the plaintiffs and defendants were partners in the boring and producing of oil from the well, then they must find for the defendants, as a court of law was not a

proper tribunal to decide and settle partnership accounts and dealings between parties." The jury rendered a verdict for him, as before stated, which, he insists, settled everything between the plaintiffs and him.

He sets out his arrangement with the oil company, as before stated, and says that Coville knew what it was, having a like arrangement with the company. He denies his insolvency, as stated in the bill, and denies that they paid William Burk, at his request, for him $208.00. He states, that the plaintiffs moved for a new trial in the action for assumpsit, which the court refused to grant, and they took a bill of exceptions, but have never taken any steps to get a writ of error or *supersedeas.* He files with this answer the bill of offsets filed by Coville & Garber in the first action of assumpsit, which is as hereinbefore stated. Also the verdict and judgment of the court in that case, and a memorandum of the record book, that a new trial was asked and refused, and a bill of exceptions was taken, in which all the evidence, given in the action of the court, was certified ; but this bill of exceptions containg the evidence is not filed. He also files the bill of particulars, filed by him in the action of assumpsit ; its contents have been before stated.

The plaintiffs gave their own depositions, and prove the facts stated in the bill, and their view of the case as before stated, and admit, that they gave the same evidence substantially before the jury ; and file a statement of all the oil, pumped by them from the well, which corresponds with their statement in the bill, and corresponds exactly with the oil, claimed by Gilman in the action of assumpsit up to the date it was instituted. Numerous other depositions were taken by the plaintiffs, to establish allegations in the bill, and no depositions of the defendant are in the record, as presented to us. The depositions of the plaintiffs, which are copied into the record, show, that a partnership in the productions of this well did exist between the complainants and the defendant, Gilman.

It is unnecessary to state any other matters, contained in these depositions. The merits of the controversy have not yet been submitted to the circuit court; nor has it yet acted upon them ; and they are not therefore before this court.

A motion to dissolve the injunction, granted in the cause, was made ; and on April 25, 1876, the following order was entered by the court:

"This cause came on this day to be further heard upon the bills, the answer of defendant, J. C. Gilman, general replication thereto, upon the exhibits filed, proofs taken in the cause, and upon a copy of the pleadings in the suit at law of J. C. Gilman against C. Coville and Jonathan Garber, which is now here presented to be filed in this cause, and upon the motion, made by the defendants, to dissolve the injunction heretofore awarded in this cause, and was argued by counsel. On mature consideration whereof, it is adjudged, ordered and decreed, that the injunction, heretofore granted against the defendants, J. C. Gilman and B. F. Mitchell, sheriff of Ritchie county, so far as it restrains the enforcement of the judgment, recovered at law by the said J. C. Gilman against Corrydon Coville and Jonathan Garber, in the bill mentioned, for the sum of $985.20, with interest and costs, be and the same is hereby dissolved."

The following are the pleadings referred to in said order :

"This day came the parties, by their attorneys, and by consent and agreement of the parties, the declaration in this cause and the account therewith, not having been filed at rules, are here filed in court; and thereupon the defendants say, that they did not assume upon themselves to pay the several sums of money, in the plaintiff's declaration demanded, nor any part thereof; and ofthis they put themselves upon the country, and the plaintiff doth likewise ; and for further plea in this behalf, the defendants say, that they have well and truly paid the sums of money, in the plaintiff's declaration demanded;

and this they are ready to verify; and leave is given them to file specifications of sets-off.

The specifications of sets-off were filed, and were substantially, what have been before stated; and the substance of the bill of particulars, filed with the plaintiff's declaration, have been also before stated.

From this order of the circuit court Coville & Garber have obtained from this court an appeal and *supersedeas.*

*John A. Hutchinson and C. C. Cole,* for appellants:

*First.*—The co-partnership between appellants and appellee being fully proved, it was error to dissolve the injunction and dismiss the bill.

The appellee having unjustly recovered a judgment at law against his co-partners upon matters involving the partnership business, it was proper for equity to enjoin the judgment and order a settlement of the partnership accounts as prayed for. High on Inj. §106; Hill on Inj. 176; *Crawford* v. *Sherwood,* 3 Leigh 85.

*Second.*—A court of equity has exclusive jurisdiction of the settlement of partnership accounts; and one partner cannot obtain any advantage over his co-partners, by action at law against them upon any matter arising out of the social business, before a dissolution of the firm. *King* v. *Chase,* 15 N. H. 9; *Barry* v. *Barry,* 3 Cr. C. C. 120; *Pate* v. *Philips,* 5 *Id.* 154.

*Third.*—Though the co-partners, Coville & Garber, defended the action at law, the verdict and judgment created no bar to their resorting to equity for relief. They are neither estopped by such judgment, nor have they waived their right to relief in equity. *Scott* v. *Shreeve,* 12 Wheat. 605; *Tremont* v. *Coupland,* 2 Bing. 170; 1 Chitty on Cont. (11 Am. ed.) 339, 340; *Brown* v. *Tapscott,* 6 M. & W. 119; *Lawrence* v. *Clark,* 9 Dana 257; *Gridley* v. *Dole,* 4 Coms. 486.

*R. S. Blair,* of counsel for appellees, cited the following authorities:

17 Vern. 425; 6 Johns. Ch. 89; 7 Cranch 332; 9

Gratt. 40; High on Inj. 61; 6 Rand. 1; 7 Rob. Prac. 13; 6 Rand. 125; 24 Gratt. 551–3.

*George Loomis,* of counsel for appellees, cited the following authorities:

Saund. on Pl. and Ev. 138, 145; 1 Chit. Pl. 417; 2 Burr. 1012; *Id.* 1019; 7 Rob. (new) Prac., p. 3, n. 3; *Id.* p. 6, n. 26; *Id.* 13; *Id.* 172 and notes; *Id.* 13; *Id.* 168, 175 and notes; 1 Johns. Ca. 492.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question, presented by the record, is: Ought the bill to have been dismissed for want of equity on its face, or on the demurrer?

The first difficulty in sustaining the bill is, that on its face it appears that the partnership, the settlement of whose accounts is sought, has never been dissolved. The general rule is, that a court of equity will not entertain a bill for the settlement of partnership accounts, while the partnership is still existing; and the bill on its face shows, that no dissolution of the partnership is contemplated. Ordinarily a bill in equity for the settlement of a partnership account, filed pending the partnership, must either directly pray the dissolution of the partnership, or show that it is contemplated, so that the general prayer for relief may be interpreted to include a prayer for dissolution. See *Forman* v. *Hornfray,* 2 Ves. & Bea. 329; *Russell* v. *Troscombe,* 4 Sim. 8.

It is true that Sir John Leach, in *Harrison* v. *Armintage,* 4 Mad. 143, thought otherwise; but the weight of above authority and reason is in favor of the general rule laid down, though there are exceptions to it: for instance, as it is a rule, that before a dissolution of a partnership all the partners must be parties to the suit, if the parties are so numerous, that they cannot be all brought before the

court, a chancery court might order a settlement of the partnership transactions, though the partnership was still existing, and no dissolution of it could be asked for or decreed, because "the proper parties could not be brought before the court." See *Walworth* v. *Holt,* 4 Myl. & Cr. 635 (18 Eng. Ch. R.).

The case before us however is no exception to the general rule ; and a court of equity cannot entertain the bill, whose object is a settlement of the partnership accounts, unless the bill shows, that a dissolution of the partnership is contemplated, or is substantially prayed for. I think however, the dissolution of the partnership is substantially prayed for in this case.    The bill alleges, "that the co-partner Gilman, by his contract with the oil company had a certain interest in the well, which by the terms of the partnership became its property, the complainants being entitled to one half of the productions of this well, and Gilman to the other half, after paying expenses.    One of the prayers of the bill is, "that Gilman may be required to assign and transfer to the complainants, his co-partners, a one-half interest of such rights, as he may have to said well and lot, in accordance with his contract." If such transfer was made, the parties would thereafter hold the well as tenants in common, and not as partners ; and this prayer is therefore the equivalent of a prayer, that the partnership should be dissolved. And so regarding it, the bill ought not to have been dismissed on demurrer, or for want of equity.

The next enquiry which presents itself is : the effect of the verdict of the jury and judgment of the court in the action of assumpsit.    Is it to have no effect in the settlement of the partnership accounts, because the settlement of such accounts belongs exclusively to a court of equity, as the complainants in their bill insist?    Or does it, as the defendant in his answer insists, preclude entirely the settlement of the partnership accounts, as such, in a court of equity, because the question was, in the action of assumpsit, fairly submitted to the jury, whether

any partnership existed, and having heard all the evidence they found, that no partnership existed? Or finally is it to be considered, that the jury, in the action of assumpsit, directly and conclusively decided only, that the one thousand two hundred and ninety-four barrels and sixteen gallons of oil, pumped prior to June 11, 1874, excluding the six hundred and forty-seven barrels and eight gallons, pumped before that time and paid as rent, after deducting a fair charge for the items of costs in sinking the well after the fair charge for pumping prior to that time, as contained in the offsets, filed by the defendants in the action of assumpsit, belonged exclusively to the plaintiff, Gilman, and that it must as well as these offsets be excluded from the settlement of the partnership; but that, the existence of the partnership not being directly put in issue by the pleadings in the action of assumpsit, a court of equity is not precluded from settling up the partnership accounts, after excluding therefrom those items on both sides, which, the jury must have found directly, did not belong to the partnership, that is, the items contained in the bill of particulars, filed with the declaration in the action of assumpsit, and those contained in the bill of offsets, filed by defendant?

The last is the effect, which ought to be given to this verdict and judgment.

It is thoroughly well settled, that matters, which have been once determined by judicial authority, cannot be again drawn in controversy by the same parties and privies to the decision. See *Smith* v. *Whiting*, 11 Mass. 446; *Young* v. *Black*, 7 Cranch 567; *Embury* v. *Conner*, 3 Coms. 522. And this rule is as applicable, when the matters were first determined in a common law court, and are afterward drawn in controversy in a suit in equity, as in any other case. *Samson* v. *Hart*, 14 Johnson 77. This conclusiveness of a judgment extends, beyond what may appear on its face, to every allegation, which has been made on the one side, and denied on the other, and

was at issue, and determined in the course of the proceedings. Thus a physician, against whom a judgment is recovered for malpractice, cannot recover in a second suit for services, in the course of which the malpractice is alleged to have occurred; and a judgment in favor of the physician will prevent the recovery against him in a second action for malpractice. *Edwards* v. *Stewart*, 15 Barb. 67; *Bellinger* v. *Craigan*, 31 Barb. 534.

All the authorities agree, that if it appears from the record, that a point in controversy was necessarily decided in the first suit, it can not be again considered in any subsequent suit. *Burke* v. *Miller*, 4 Gray 114; *Whelan* v. *Hill*, 2 Whart. (Pa.) 718; *Marsh* v. *Pier*, 4 Rawle (Pa.) 273; *Rice* v. *King*, 7 Johns. 20; *Betts* v. *Starr*, 5 Conn. 550; *Hopkins* v. *Lea.*, 6 Wheat 109; *Astin* v. *Parkins*, 2 Burr. 666.

When the record discloses the exact point in controversy, the rule, above laid down, is universally admitted; but when, by reason of the generality of the issue, it embraces many issues, it is not possible to determine, on what issue the verdict was rendered, the question, whether the real issue tried by the jury, and on which their verdict was rendered, can be proven by parol evidence, has given rise to decisions, which are not harmonious. The weight of authority however, as well as of reason, is, that in such case the issue, actually tried by the jury, may be proven by parol; and when so proven, it is as conclusive, as if shown by the record alone. *Doty* v. *Brown*, 4 Coms. 71; *Washington, Alexandria and Georgetown S. P. Co.* v. *Sickles et al.*, 24 How. 344; *Badcock & Co.* v. *Camp*, 12 Ohio N. S. 11, 36; *Wood* v. *Jackson*, 8 Wend. 10. But it is the verdict and judgment on the issue, actually made, which is thus conclusive, and while it establishes his right conclusively, it does not establish the facts, on which that right depends, unless they are set forth definitely on the record. See opinion of Supreme Court, delivered by Justice Catron in *Aspden et al.* v. *Nixon et al.* 4 How. 499; *Bennet* v.

*Holmes,* 1 Dev. & Bat. 486 ; *Haight* v. *The City of Keokuk,* 4 Clarke (Iowa) 199; *Shafer* v. *Stonebraker,* 4 Gill. & J. 345 ; *Washington, Alexandria and Georgetown S. P. Co.* v. *Sickles et al.,* 24 How. 333; *Hibshman* v. *Dalleban,* 4 Watts 183.

Parker, Chief Justice, in *King* v. *Chase,* 15 N. H. 15, lays down the law on this subject with great clearness. He says : "The judgment is conclusive only upon the matter, which was directly in issue upon the former trial; and the question arises, what is to be understood by the matter in issue ? The *Dutchess of Kingston case,* 11 St. Tri. 261, furnishes the rule. All are agreed in the rule laid down in that case ; but the difficulty lies in its application, in determining what is meant by a judgment directly on the point.

"Any part, attempted to be established by evidence and controverted by the adverse party, may be said to be in issue in one sense. But this is not the matter in issue, within the meaning of the rule. It is the matter, upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading, which is in issue.

"The declaration may show specially, what this is, or it may not. If it does not, the party may adduce other evidence to show, what was in issue, and thereby make the pleadings, as if they were special. But facts, offered in evidence to establish the matter in issue, are not themselves in issue, within the meaning of the rule; although they may be controverted on the trial. Deeds, which are merely affirmed in evidence, are not in issue, even if their authenticity be denied."

In that case King sued Chase, a sheriff, in trespass, for levying upon and selling certain hay, which, the evidence showed, he claimed had been conveyed to him by a certain mortgage. Under the general issue the defendant proved, that by the same mortgage certain oats had been conveyed to the plaintiff, and that he had levied on those oats, and been sued therefor by the plaintiff in an

action of trover; and under the general issue he had defended the suit on the ground that the mortgage was fraudulent and void; and this he proved by parol evidence. The jury had found a verdict for the defendant in this suit and judgment was rendered upon it. The court below permitted this evidence to be received; but said, while proper evidence to be submitted to the jury to show, that the matters in controversy in the last suit had been determined in the first, yet it was not to be regarded as conclusive.

This action and judgment of the court was reversed; and Parker, Chief Justice, further says in his opinion: " In the first suit the matter in issue was the title to the oats, and the conversion by the defendant in that case. Upon that the jury passed. They found, that the plaintiff had no title, or that the defendant did not convert them. It may be shown by parol evidence, on which ground the verdict proceeded; and it appears in this case that they found the plaintiff had no title. The conversion in that case is not denied. That matter then is settled. The verdict and judgment may be given in evidence in another action for the oats, and is conclusive; but that is the extent of what was in issue.

"It appears, that the title of the plaintiffs, set up in that case, was by the mortgage. In finding, that the plaintiffs had no title to the oats, the jury must have been of opinion, that the mortgage was fraudulent. It is contended, that this was the issue and the only matter in issue. But this was only a controversy about a particular matter of evidence, upon which the plaintiffs then relied to show title. If that were the only matter in issue, the plaintiffs might bring another suit for these oats, against the same defendants, relying on some other title than the mortgage, and try the title to the oats over again. Can he do so? Clearly not; and the reason is, that it is his title, which has been tried; and he is concluded. The title however, which has been tried is only his title to the oats. The question, whether the mort-

gage was fraudulent came up only incidentally, by reason of his relying on that as his title. But the mortgage was not the matter of issue. *Towns* v. *Mines*, 5 N. H. 263.

" But while this finding is conclusive on the question of the plaintiffs' title to the oats, it is neither conclusive nor evidence upon anything else, because nothing else was in issue. And this is important for the security of both parties. The title of the property in question in this suit, the hay, has not been tried. If the plaintiff has no title to it but the mortgage, the defendants may show the mortgage is fraudulent by the same evidence, the matter was shown before."

A bill of particulars is evidence to show the precise subject matter of the suit, the verdict and judgment in which are deemed to be conclusive evidence of the matter adjudicated in it. See *Marsh* v. *Pier*, 4 Rawl. (Pa.) 273.

Applying the law to the case before us, it is obvious from the bill of particulars, filed in the first action of assumpsit, that the plaintiff claimed, that the proceeds of the one thousand two hundred and ninety-four barrels and sixteen gallons of oil, pumped prior to June 11, 1874, were his property ; the defendants, by their plea of non-assumpsit, put directly in issue the plaintiff's claim to this oil, pumped prior to June 11, 1874. If the plaintiff did not own this oil, the jury would necessarily have to find for the defendant. The verdict of the jury for the plaintiff, and the judgment of the court thereon, are on the principles above stated conclusive of the fact, that this one thousand two hundred and ninety-four barrels and sixteen gallons, were the property of plaintiff, as the ownership of it was directly in issue. It being thus conclusively determined, that this one thousand two hundred and ninety-four barrels and sixteen gallons of oil belonged to the plaintiff, Gilman, the defendants are necessarily precluded from claiming in this chancery suit, that it did not belong to Gilman, but belonged to the partnership of Gilman, Coville & Garber.

Again, when the defendants filed their bill of offsets, they thereby claimed, that. they had a right to offset against the plaintiff's demand on them for the proceeds of his said oil the costs and expenses of sinking the oil well, which are set forth in the bill of offsets filed, and also the cost of pumping oil from the well prior to June 11, 1874. And this claim of Coville & Garber must have been necessarily passed upon by the jury; and they decided, that so much of Coville & Garber's claim for these particular items of costs in sinking this well and pumping this oil, was just, as would be sufficient to reduce the plaintiff's claim to the proceeds of this oil, and for the use of his engine and tank, to $985.20.

All the parties to this action of assumpsit are, on the principles above laid down, conclusively bound by this verdict of the jury and judgment thereon; and therefore in the chancery cause it must be held, that this judgment determines conclusively, that the plaintiff, Gilman, is entitled to be paid by Coville & Garber for one thousand two hundred and ninety four barrels and sixteen gallons of oil, pumped prior to June 11, 1874, and for use of his engine and tank to that date, $985.20, this oil belonging exclusively to Gilman; and that Coville & Garber having been allowed as an offset so much on their bill of offsets, as the jury deemed just, they are concluded from setting up against Gilman in this chancery cause any claim on account of any item, set forth in their bill of particulars of offsets; but they are not precluded, from setting up any claim against Gilman, or against the partnership of Gilman Coville & Garber, if there be such partnership, any item of expense, not specified in this bill of particulars of offsets, even though such charge arose, or expense was incurred, prior to June 11, 1874, as the jury could not have allowed them anything for any such item, not specified in their bill of offsets.

The principles, above stated, lead us necessarily to the conclusion, that the verdict and judgment in the first

action of assumpsit not only does not conclusively
determine, that all the oil, pumped from the well since
June 11, 1874, after the payment of rent and expenses
of pumping, belong to Gilman individually; but this
verdict and judgment cannot be regarded, as any evi-
dence on this point.   The ownership of any oil, pumped
after June 11, 1874, was obviously not directly included
in the issue, decided in the action of assumpsit.   Nor
was the question, whether there was, or was not, a part-
nership between the plaintiff and defendants, included in
the issue, made by the pleadings in this action of as-
sumpsit.   It was a matter of fact, that during the trial
of this action of assumpsit the question, whether there
was, or was not, a partnership, became a controverted
fact; but, as we have seen, this controverted fact, arising
incidently, is not itself the issue, within the meaning of
the rule, that a judgment is conclusive on the matters in
issue in a suit.

The jury, in the case of *King* v. *Chase*, 15 N. H. 15,
must have concluded, that the mortgage, under which,
the evidence showed, he claimed the oats, was fraudu-
lent, and therefore he had no claim to them; still it was
held, that this did not conclude him from claiming in
another suit against the same party hay, which he
claimed only by the same mortgage, though it would pre-
clude him from claiming again the oats, because the va-
lidity of the mortgage was not involved in the issue,
made by the pleadings.   Here the fact, that the jury may,
or even must, have found from their verdict, that there
was no partnership, precludes the parties from claiming,
that there was, so far as the oil specifically claimed in
that case is concerned; but will not prevent the parties
setting up, that there was such a partnership, so far as
any oil, not claimed in that action of assumpsit, is con-
cerned; for the question, whether there was, or was not,
a partnership, was not directly involved in the issue,
made by the pleadings in that case.

The position of the appellant's counsel, that a court

of equity has exclusive jurisdiction of the settlement of partnership accounts, and that a court of equity will interfere by injunction, whenever the defense is one of purely equitable cognizance, are unquestionably sound; but they have no application to the present case. The jury did not undertake to settle any partnership account; they were expressly instructed then, that they could not do so, and that if the items, claimed by the plaintiff in the action of assumpsit, were items in a partnership account, they could not act on them, but must find for the defendant; and in rendering a verdict for the plaintiff, they must have decided, that there was no partnership, or at any rate that the items of account, claimed by the plaintiff, did not belong to any partnership account, but did belong to the plaintiff individually; and so far as these items are concerned, we have seen, their finding on these items is conclusive on the parties.

The case of *Wells, et al.,* v. *Strange,* 5 Ga. 22, is not at all inconsistent with the views I have above expressed. A tavern had been built by a company or partnership, formed for the purpose, on a lot, subscribed by one of the partners as his portion of the capital stock; and a hotel was erected by the partnership or company on it; and it was rented of the partnership by one of the partners. The father of the partner, who had subscribed the lot as his share of the stock, then instituted an action of ejectment, he having the legal title to this lot; and he recovered the tavern and its back rents for its use. A bill was then filed for a settlement up of the partnership by the partner, who had rented this hotel; and an injunction was awarded against the plaintiff in the ejectment suit, to prevent him from enforcing this judgment in the ejectment suit, the bill alleging that the partnership was, under certain facts stated, the equitable owner of this lot and hotel. It is obvious, that the only question, submitted to the jury in the trial of the ejectment, was whether the plaintiff had the legal title to this lot and tavern; and this was

1878
Special Term.
Coville & Gar-
ber
v.
Gilman.

all, that was decided by the jury. But the conclusiveness of this verdict and·judgment was in no manner assailed by the granting of the injunction, as it was granted, because it was inequitable to permit him to take advantage of the fact, that he had the legal title, to oust those, who held the equitable title. And the rents and profits of course, in a court of equity, would follow the equitable title ; and one who could claim them only as their legal owner, in trust for the partnership, ought not to be permitted to collect them of one, who was a partner in the partnership, and who alleged, that the partnership was in his debt. The case was simply one of the familiar cases, where a court of equity interferes by injunction, to prevent a trustee from ousting the *cestui que trust* by legal proceedings out of property, which in equity belonged to the *cestui que trust.*

The allegation in the bill, that Gilman owed Coville & Garber $208.00, money paid by them for him to Burke, and that Gilman was insolvent, was no ground for continuing the injunction to the enforcement of the judgment in the action of assumpsit, for several good reasons. And one or two of these it will suffice to state: First–These allegations of the bill are positively denied by the answer on oath, and no evidence has been taken to prove them; and again, excluding from the partnership the matters, which were conclusively settled by the verdict and judgment in the common law suit, and the statement in the bill and the testimony of the plaintiffs in the chancery cause. show clearly, that, on a settlement of the partnership, they must be in debt to Gilman more than $208.00, and therefore there is no reason, why he or his assignees should not be permitted to enforce their judgment.

The next enquiry is: Ought not the court to have dissolved the injunction, so far as it prohibited Gilman from prosecuting his action of assumpsit against Coville & Garber for oil, pumped since the institution of the first action of assumpsit? Gilman would seem to have as much right, by such a suit, to have the verdict of a jury

1878
Special Term.

Coville & Gar-
ber
v.
Gilman.

on the question, whether he was the sole owner of this oil, as the other parties have to the judgment of the chancery court on the question, whether there was a partnership. And if the same exact question was involved in both proceedings, it would seem, that the suit first brought ought to be permitted to be prosecuted, and the question of controversy settled in it. But we have seen, that the same question is not involved in the action of assumpsit and in the chancery suit. In the action of assumpsit the jury and court can only determine, whether the oil pumped up to the time of the institution of that suit was the individual property of Gilman, or partnership property. And another, or many other similar actions of assumpsit, might be brought from time to time, just as two have already been brought; and the decision of one of them could not be even used as evidence in the other. On the other hand, in the chancery suit a decision, that no partnership exists, or the contrary, will settle this controversy forever, and prevent any other suit, in which this point could be again controverted. To avoid multiplicity of suits therefore, it would seem to be proper for a court of equity to enjoin this common law suit, and prohibit the institution of others, till this question has been conclusively settled in this suit in equity. The avoiding of a multiplicity of suits is a familiar source of equitable jurisdiction. And injunctions are properly awarded to prevent such multiplicity of suits. *Waters* v. *Taylor*, 2 Ves. & Beam. 302; *Ware* v. *Harwood*, 14 Ves. Jr. 33; *Trustees of Huntington* v. *Nicoll*, 3 Johns. 566.

There is therefore no error in the decree of April 26, 1876, dissolving the injunction, which had been granted, so far as it restrains the enforcement of the judgment, recovered at law by said J. C. Gilman against Corrydon Coville and Jonathan Garber in the bill mentioned, or so far as it refrained from dissolving the residue of the injunction.

The said decree must therefore be affirmed; and the appellees must recover of the appellants their costs, ex-

pended in this court, and $30.00 damages; and this cause is remanded to the circuit court of Ritchie county, with instructions, that when the same comes on for hearing, if from the evidence then in the cause the court is satisfied, that there was no partnership between J. C. Gilman and the complainants, the injunction then should be entirely dissolved, and the bill dismissed at the complainants' costs; but if such partnership is proven to the satisfaction of the court, and it is also proven, that it ought to be dissolved, the court should render a decree dissolving the partnership, and disposing of all its assets, and for closing up the same, and order an account to be taken of the partnership accounts, in the taking of which the commissioner should exclude from the accounts all the items, included in the bill of particulars, filed in the first action of assumpsit, and all the charges in the bill of offsets, filed in said action of assumpsit, but permit either party to prove any item, properly belonging to the partnership accounts, though its date be prior to June 11, 1874, if the same is not included in said bill of particulars or bill of offsets; and further proceed in said cause according to the principles laid down in this opinion, and the principles governing courts of equity in such causes.

JUDGES HAYMOND and MOORE concurred.

DECREE AFFIRMED and cause remanded.