Eᴀsᴇᴍᴇɴᴛs—*The word "Heirs" May Be Used in Broad Sense to Include Deceased's Wife in Grant of an Easement.*

While the word "heirs" in its primary or technical meaning is limited to those who take an interest by descent in the real estate of a deceased person, and it will ordinarily be given this primary or technical meaning when used in an instrument creating an estate or designating the person for whom an interest in an estate is intended, it may be, and frequently is, used in a broader sense as including the wife, children, or members of the family of the party referred to, and when it is apparent from the language used in connection with the term, the purpose sought to be accomplished by the writing and the subject-matter of the contract, that it was used in this broader sense, the courts will give to it such meaning.

Certified Question from Circuit Court, Ohio County.

Suit by Louise M. McLain and others against Anna Hay McLain and others.

Certified for review of ruling on a demurrer to a bill and amended bill.

*Reversed and demurrer sustained.*

*John P. Arbenz* and *T. S. Riley,* for plaintiffs.
*William G. Caldwell* and *Frank W. Nesbitt,* for defendants.

Rɪᴛz, Jᴜᴅɢᴇ:

The question presented upon this certificate from the circuit court of Ohio county is the propriety of the court's ruling upon a demurrer to a bill and amended bill.

On the 22nd of February, 1873, Henry B. McLain and Robert B. McLain were the owners of a parcel of land situate at the corner of Market and Twelfth Streets in the city of Wheeling. Upon this tract of land there were at that time

erected two brick buildings, one being upon the corner of Twelfth and Market Streets, and the other immediately south thereof fronting on Market Street. The upper floors of these buildings were reached by a stairway extending up through the building constructed upon the corner lot, the upper floors of the other building being reached by a doorway through the wall separat'ng the two buildings. This being the situation, on the above date the said Henry B. McLain and Robert B. McLain sold to John G. McLain the building fronting on Market Street, together with the lot upon which it was situate, the upper floors of which were reached from the stairway in the corner build'ng. A contract was entered into between the parties showing this sale, and providing for certain deferred payments, the last of which was to be made on the first of July, 1878, and providing that when said last payment was made a deed would be made to the said John G. McLain for the property. The said contract also contained the following stipulation or grant: "The parties of the first part grant to the party of the second part the use of the area in the rear of the property so conveyed to be used in common with their tenants on Morrow Street and bind themselves not to erect any building or buildings on the same except by mutual consent the said John G. McLain binding himself and his heirs to pay a just proportion of the expense of cleaning and keeping in repair the water closet drain &c. &c. The parties of the first part also grant to the party of the second part the right of ingress and egress to the upper story of the building before conveyed, by their main stairway on Market Street in common with their own tenants the said party of the second part to pay a just proportion of the expense of repairing and keeping said stairways in order. If said parties of the first part in altering or improving their property remove the stairway on Market Street the said John G. McLain is to have the joint use of any other they make for access to said upper stories on same terms as before specified. The before mentioned grants or privileges are to continue in force only as long as the said party of the second part or his heirs own the property to be conveyed by said deed. And it is understood that the stipulations aforesaid are to apply to

and to bind the heirs executors, and administrators of the respective parties.'' John G. McLain completed his payments for the property at the time appointed, and a deed was made conveying the same to him, but no mention was made in said deed of the easement or right to use the stairway in the adjoining building. The plaintiffs in this suit are the successors in title of Henry B. and Robert B. McLain, and the defendants are the widow and children of John G. McLain.

It appears that the tenants of the upper floors of the building conveyed to John G. McLain continued to use the stairway in the adjoining building until the time of his death in the year 1914. By his will he devised this property to his widow, Anna Hay McLain, with the provision in the will that should she remarry the devise would become void, and the estate pass to those who would take the same under the laws of descents and distribution. After McLain's death the tenants of his widow, who took the property under the will, continued to use the stairway. The plaintiffs denied the right of the widow or of her tenants to use said stairway, and upon their refusal to desist from such use a bill was filed against the widow asking that she be enjoined from using said stairway in connection with the upper floors of the building devised to her by her husband. A demurrer was interposed to this bill, and it seems that the court held the same for sometime before passing thereon. While the same was pending upon the demurrer the widow conveyed the property by apt and proper deed to the other defendants, who are her four children, as well as the children of her late husband, John G. McLain. An amended bill was then filed making these grantees parties defendants, and contending that they had no right superior to that of the widow to the use of the stairway, and asked that they and their tenants be enjoined from its use. A demurrer was interposed to this bill. The court below held that during the time the title to this real estate was in the defendant, Anna Hay McLain, neither she nor her tenants had the right to use the said stairway as appurtenant to her property, but that when she made the deed conveying the same to the children of John G. McLain the right to use the stairway as appurtenant to said property was restored.

The demurrer to the bill was therefore overruled, and the bill sustained for the purpose of ascertaining what damages the plaintiffs were entitled to recover by reason of the improper use of the stairway during the time the title to the property was in the defendant, Anna Hay McLain.

The defendants insist that the court should have sustained the demurrer to the bill for the reason that the word "heirs" in the grant of the easement, providing that this privilege should continue in force only so long as the said John G. McLain or his heirs owned the property, was not used in its strict legal sense, but in a broader sense, and included not only his surviving children, but his widow as well; and also for the reason that even though the word heirs be construed in its strict legal sense, the children of John G. McLain did take an estate in this property upon his death, being the right to be possessed of it and own it in case their mother remarried. It is quite true that the term "heirs" in its strict legal sense may not include a surviving wife or husband, but it is also true that in the common or ordinary acceptation of the term it is used to designate anyone who by law takes any interest in the estate of a deceased party. Strictly speaking, distributees of the personal estate of a deceased person are not heirs. The word in its narrow technical significance includes only those who take real estate by descent. It is also quite true that in ascertaining the meaning of the word heirs it is the rule to give it its technical meaning, and particularly is this true where, as is usually the case, the instrument in which it is used creates an estate and designates the parties entitled to it. At common law the word heirs was limited to those who were entitled to the estate of a deceased person by reason of their blood relationship to him, but this court has held in the case of *Reid* v. *Stuart,* 13 W. Va. 338, and *Custer* v. *Hall,* 71 W. Va. 119, that the term would include a husband or wife entitled to take under the Statute of Descents and Distribution. The language used in the proviso under consideration here was not used for the purpose of creating any estate, or designating any person entitled to take the same, but was simply general language used for the purpose of indicating that the right to use the stairway was limited to John

G. McLain and his immediate successors. There are many cases which give to the term heirs a much broader significance than that contended for by the plaintiffs here, depending upon the connection in which the term is used and the apparent purpose to be accomplished thereby. In the case of *Mover* v. *City of Oshkosh,* 151 Wis. 586, it was held that a claim filed in favor of the legal representatives and heirs of a deceased person included his widow, it being apparent that the term heirs was used to include all those who had any claim by reason of his death, and it is there held that while the rule is that the primary meaning will be given to the term ordinarily, still this rule will readily yield where it is apparent from the context, the subject-matter, and the purpose of the writing that the words were used in a broader sense as indicating members of the family, next of kin or descendants. In the case of *Hanson* v. *Relief Association,* 59 Minn. 123, it was held that the term heirs as used in a life insurance certificate issued under the by-laws of the relief association, providing that the purpose of the association was to aid widows and orphans of deceased members, included the widow of a deceased member. A similar holding was made in the case of *Addison* v. *Commercial Travellers' Asso.,* 144 Mass. 591. In the case of *Griswold* v. *Sawyer,* 125 N. Y. 411, it was held that a policy of insurance payable to the legal representative of the insured who had a wife and seven children dependent upon him was payable to his widow and children, and not to his administrators upon his death, the term ''legal representatives'' under the facts existing in that case being held not to mean administrators or executors, but to mean the family of the insured, because it was apparent that the purpose of the life insurance policy was to provide for his wife and family. In *Howell* v. *Garton,* 82 Kan. 495, it was held that the word ''heirs'' frequently has a much broader meaning than the strict technical one. It is said in that case that the term is used to designate children, grandchildren, husband, wife, and sometimes legatees and next of kin, as well as any other class who may become entitled to any interest in property upon the death of the owner thereof. Many more cases might be cited to the same effect, but these sufficiently indicate that the

word "heirs" is not always given its primary or technical meaning.

In the case we have here the restrictive clause quoted was not for the purpose of creating any estate, but was only for the purpose of limiting the persons who might have a right to use the easement granted to John G. McLain. There can be little doubt but that John G. McLain interpreted it as including his wife, for he would hardly have placed the property in such a position as to deny it this valuable easement had he believed that that would be the effect of devising it to his widow. The language used in the last sentence throws some light upon the proper construction of this term. It is there stated that the stipulations are to apply to and bind the heirs, successors and administrators of the respective parties. If the word heirs in the restrictive clause was used in its primary sense, it is hard to understand how the administrators and executors of the parties could be bound by the stipulation. When we consider the subject-matter with which the parties were dealing, and all of the language used by the parties in dealing with it, as well as the apparent purpose which they sought to accomplish, we are convinced that this term heirs was not used in its primary sense, but as meaning any member of John G. McLain's family to whom the estate might pass, either by descent or by devise.

We are, therefore, of the opinion that the plaintiffs are entitled to no relief upon their bill or amended bill, and that the demurrer interposed thereto should have been sustained, and the question certified is answered accordingly.

*Reversed and demurrer sustained.*